**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Brian YASIPOUR, Sr., Appellant.**

Superior Court of Pennsylvania.

Argued April 30, 2008.

Filed Sept. 17, 2008.

---

Edward J. Rymsza, Williamsport, for appellant.

Kenneth A. Osokow, Assistant District Attorney, Williamsport, for Commonwealth, appellee.

BEFORE: LALLY–GREEN, SHOGAN and COLVILLE *, JJ.

OPINION BY SHOGAN, J.:

¶ 1 Appellant, Brian Yasipour, Sr., appeals from the judgment of sentence entered following his convictions of third degree murder, possession of an instrument of crime, and tampering with evidence.[1] We affirm.

¶ 2 We summarize the factual history of this case as follows. On the morning of August 24, 2001, Appellant, then age 52, was present at a custody hearing against his wife, Millie Yasipour ("Millie"), regarding a petition Appellant filed seeking to increase his custody of his daughter, Susan Yasipour ("Susan"). Contrary to the outcome sought, Appellant's custody was reduced by the court. After the hearing, Appellant requested a special visitation with Susan later that day, even though a visit was not scheduled for that day. After lunch that afternoon, Millie took Susan out of day care and turned her over to Appellant. Susan protested consistently throughout the afternoon.

¶ 3 At approximately 4:00 p.m., Appellant's neighbors heard a girl screaming, "Stop, Daddy, no. Stop. No, Daddy." Appellant stabbed Susan sixty-one times in the neck and chest with several kitchen knives. A short time later, at 4:30 p.m., Appellant was seen buying flowers at a Bi–Lo store. Appellant told the store clerk they were for his daughter. Later that afternoon, Appellant was seen dumping trash bags into the dumpster of a Uni–Mart store. The bags contained multiple pornographic videotapes. In addition, Appellant commenced cleaning the area of the murder. Appellant washed Susan's body and the clothes she had been wearing, along with the linens and clothes that he had worn. Appellant also washed the knives in the kitchen sink. At approximately 7:30 p.m., Appellant telephoned 911 to report the murder.

¶ 4 When police arrived at Appellant's home, Appellant told them he had returned to his residence and found his daughter dead in an upstairs bedroom. The clothes dryer was still running at the time the police arrived. Police discovered Susan's body in the upstairs bedroom, with flowers on her chest. Appellant was arrested and charged with one count each of homicide, possession of an instrument of crime, and tampering with or fabricating physical evidence.

¶ 5 The trial court summarized the procedural history of this case as follows:

> After a non-jury trial, [Appellant] was found guilty but mentally ill of third degree murder, possession of an instrument of crime and tampering with evidence, in connection with the killing of his [four]-year-old daughter. By Order dated June 2, 2006, [Appellant] was sentenced to twenty to forty years incarceration on the count of murder, one to five years on the count of possession of an

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. §§ 2502, 907 and 4910, respectively.

instrument of crime, and six months to two years on the count of tampering with evidence. All sentences were directed to run consecutively, for an aggregate sentence of twenty-one and one-half to forty-seven years.

Trial Court Opinion, 8/21/06, at 1.

¶ 6 On June 9, 2006, Appellant filed post-sentence motions. The trial court heard argument on the post-sentence motions and denied relief on August 21, 2006. On August 28, 2006, Appellant filed the instant appeal.

¶ 7 Appellant presents the following issues for our review:

I. Did the trial court err in determining that the evidence at trial was insufficient to establish [Appellant's] insanity at the time of the offense?

II. Did the trial court's 20 to 40 year state prison sentence, pursuant to its guilty but mentally ill verdict, violate [Appellant's] state and federal constitutional rights to be free from cruel and unusual punishment?

III. Was the evidence at trial insufficient to establish that [Appellant] committed the crime of tampering with evidence beyond a reasonable doubt where the Commonwealth's evidence failed to establish that [Appellant's] behavior impaired the availability of evidence to the police and/or that he possessed the requisite intent to commit the offense?

Appellant's Brief at 4.

¶ 8 Appellant first argues the trial court erred in concluding that Appellant failed to present sufficient evidence to establish his insanity at the time of the offense. Essentially, Appellant contends that the testimony presented by Appellant satisfied the proper burden for proving that Appellant was insane at the time of the murder.

¶ 9 The defense of insanity is codified at 18 Pa.C.S.A. § 315, which states the following:

(a) **General rule.**—The mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of evidence that the actor was legally insane at the time of the commission of the offense.

(b) **Definition.**—For purposes of this section, the phrase **"legally insane"** means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong.

18 Pa.C.S.A. § 315 (emphasis original).[2]

¶ 10 To plead the defense of insanity suggests that the defendant committed the act, but was not legally culpable. *Commonwealth v. Mizell*, 493 Pa. 161, 164, 425 A.2d 424, 426 (1981). An insanity defense focuses upon a defendant's capacity, at the time of the offense, to understand the nature and quality of his actions or whether he knew that his actions were wrong. *Commonwealth v. Hughes*, 581 Pa. 274, 319 n. 29, 865 A.2d 761, 788 n. 29 (2004).

¶ 11 It has long been accepted that criminal defendants may be presumed sane for purposes of determining their criminal liability. *Commonwealth v. Rabold*, —— Pa. ——, ——, 951 A.2d 329, 341

**2.** As explained by our Supreme Court in *Commonwealth v. Frey*, 588 Pa. 326, 335, 904 A.2d 866, 871 (2006), section 315(b) defines "legally insane" in a manner consistent with the common law *M'Naghten* test for legal insanity. *See Regina v. M'Naghten*, 8 Eng. Rep. 718 (1843).

(2008). Thus, under the clear language of section 315(a), the burden of proving insanity by a preponderance of the evidence is upon the defendant. *Commonwealth v. Heidnik,* 526 Pa. 458, 466, 587 A.2d 687, 690–691 (1991); *see also Commonwealth v. Reilly,* 519 Pa. 550, 564, 549 A.2d 503, 509–510 (1988) (summarizing the history of the defense of insanity in this Commonwealth). Moreover, we have long stated that "[t]he Commonwealth can prove an accused's sanity not only by psychiatric testimony but also by lay testimony which shows that he or she knew the nature and quality of the act committed and knew that what had been done was wrong." *Commonwealth v. Frisoli,* 277 Pa.Super. 396, 419 A.2d 1204, 1206 (1980) (citing *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d 627 (1974)). Furthermore, it is within the factfinder's right to disbelieve an insanity defense and credit the testimony of the eyewitnesses. *Commonwealth v. Holley,* 945 A.2d 241, 249 (Pa.Super.2008) (holding that the jury was within their rights to disbelieve the defendant's insanity defense and credit the testimony of the eyewitnesses).

¶ 12 Our review of the record reflects that, in rendering the verdict, the trial court specifically stated Appellant did "not meet the McNaughton standard and was not insane at the time [of the murder], though [Appellant] was certainly suffering from mental disorders." N.T., 6/24/06, at 20. In reaching its conclusion, the trial court heard testimony from various psychiatric specialists and lay persons. Psychotherapist Nicole Miele testified that she had provided treatment services to Appellant for two months in 1996 when Appellant suffered depression and paranoid feelings. N.T., 3/14/06, at 119–188. Dr. Michael Marceau testified that he also evaluated Appellant in 1996 and indicated Appellant had been reporting symptoms of depression and paranoia. N.T., 3/15/06, at 24. Dr. Stanley Schneider testified that

he interviewed Appellant five days after the murder and diagnosed Appellant with dissociative amnesia, because Appellant stated he had no recollection of what happened during the time of the murder. N.T., 3/15/06, at 56. Dr. Schneider explained that form of amnesia is an inability to recall important personal information, usually over traumatic or stressful situations. *Id.* at 56–57. Dr. Jacqueline Sallade testified that she had evaluated Appellant in 1995 in relation to a disability claim Appellant had with the Social Security Administration and reported Appellant had characteristics of a person with a dissociative state. N.T., 3/15/06, at 112. Dr. Terri Calvert testified that Appellant had a long history of mental illness and suffered from auditory hallucinations, and paranoia. N.T., 3/16/06, at 9–12. Dr. Calvert opined that the symptoms Appellant reported over the years were consistent with "post traumatic stress disorder." *Id.* at 51. Dr. Pogos Voskanian testified that he examined Appellant on three occasions after the murder and determined Appellant suffered from post-traumatic stress disorder and schizophrenia. N.T., 3/16/06, at 114. Dr. Voskanian further testified that, as a result of Appellant's psychiatric condition, Appellant could not differentiate between right and wrong. *Id.* at 92.

¶ 13 The Commonwealth presented the testimony of Dr. Timothy Michals, who testified that, after conducting several evaluations of Appellant and upon review of Appellant's record, he did not believe Appellant suffered from post traumatic stress disorder or paranoid schizophrenia. N.T., 3/16/06, vol. 2, at 19–20, 52. Dr. Michals explained that he had significant experience in dealing with post traumatic stress disorder and that certain behaviors of Appellant were inconsistent with the disorder being present. *Id.* at 22, 25–26, 27–28, 30. Rather, Dr. Michals opined

that Appellant suffered from bipolar disorder. *Id.* at 14. Dr. Michals also opined that, because Appellant claims to have no recall of the events, one could not give a reasonable opinion as to Appellant's mental state at the time. *Id.* at 34–35. Dr. Michals further testified that Appellant's behavior before the crime and after the crime indicated a state of sanity. *Id.* at 39.

¶ 14 In addition, the Commonwealth presented witnesses who testified regarding Appellant's peculiar behavior after the crime which reflects that he knew the quality of the act committed and that Appellant knew that what had been done was wrong. A lay witness testified that he watched Appellant, shortly after the murder, dump trash bags into a gas station dumpster. N.T., 3/13/06, at 59. The bags included multiple sexually explicit videotapes that Appellant had removed from his home. N.T., 3/6/06, at 138. Police officers who responded to the incident explained that they observed Appellant in a cognitive state and that he explained he recently arrived at the home and found his daughter dead. N.T., 3/6/06, at 41–42. Appellant told the officer that he had cleaned her up and placed flowers around her body. *Id.* at 42.

■ ¶ 15 In light of the foregoing evidence presented to the trial court, we cannot conclude that the trial court erred in determining that Appellant failed to establish by a preponderance of the evidence, that he was legally insane at the time he committed the murder. The evidence included divergent diagnoses of Appellant's

mental state by several specialists over various periods of time. In addition, lay testimony indicated that Appellant took steps to prepare his home in anticipation of the arrival of police and concocted a story to hide the events that transpired, thus indicating Appellant knew the nature and quality of the act committed and that it was wrong. The trial judge, sitting as the finder of fact, was free to believe the testimony supporting Appellant's sanity. Hence, Appellant's claim lacks merit.

■ ¶ 16 Appellant next argues that his prison sentence of twenty to forty years, imposed pursuant to the guilty but mentally ill verdict, is a violation of Appellant's federal and state constitutional rights because it amounts to cruel and unusual punishment. Specifically, Appellant claims that the sentencing scheme established by 18 Pa.C.S.A. § 314 and 42 Pa.C.S.A. § 9727 violate the Eighth Amendment to the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution because it subjects mentally ill defendants to the same criminal liability and sentences as those defendants who are not mentally ill. Appellant argues that he is being punished for his mental illness, which is beyond his control. Appellant further asserts that he is a member of a "deficient class" and deserves less punishment because he has less capacity to control his conduct. In support of his claim, Appellant relies upon several United States Supreme Court cases which limited application of the death penalty. For the following reasons, we conclude that this issue lacks merit.[3]

---

**3.** We note that the Commonwealth argues that this issue is waived due to Appellant's failure to present the claim to the trial court in the first instance. However, we have held that an appellant who challenges the constitutionality of his sentence of imprisonment on a claim that it violates his right to be free from

cruel and unusual punishment raises a legality of sentencing claim since he is challenging the trial court's authority in imposing the sentence. *See Commonwealth v. O'Neil,* 393 Pa.Super. 111, 573 A.2d 1112, 1114 (1990) (finding that a legality of sentencing claim existed where an appellant alleged that, be-

¶ 17 In addressing the constitutionality of the statutory sentencing scheme challenged by Appellant, we are mindful of the following:

The Pennsylvania Supreme Court has consistently held that enactments of the General Assembly enjoy a strong presumption of constitutionality. *Commonwealth v. Barud,* 545 Pa. 297, 304, 681 A.2d 162, 165 (1996) (citing *Commonwealth v. Mikulan,* 504 Pa. 244, 247, 470 A.2d 1339, 1340 (1983)). All doubts are to be resolved in favor of sustaining the constitutionality of the legislation. *Commonwealth v. Blystone,* 519 Pa. 450, 463, 549 A.2d 81, 87 (1988), *affirmed,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990) (citing *Hayes v. Erie Ins. Exchange,* 493 Pa. 150, 155, 425 A.2d 419, 421 (1981)). "Nothing but a clear violation of the Constitution-a clear usurpation of power prohibited-will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void." *Glancey v. Casey,* 447 Pa. 77, 88, 288 A.2d 812, 818 (1972) (citing *Busser v. Snyder,* 282 Pa. 440, 449, 128 A. 80 (1925)). In other words, "we are obliged to exercise every reasonable attempt to vindicate the constitutionality of a statute and uphold its provisions." *Commonwealth v. Chilcote,* 396 Pa.Super. 106, 578 A.2d 429, 435 (Pa.Super.1990) (citing *Commonwealth v. Trill,* 374 Pa.Super. 549, 543 A.2d 1106, 1116 (Pa.Super.1988)). "The right of the judiciary to declare a statute void, and to arrest its execution, is one which, in the opinion of all courts, is coupled with responsibilities so grave that it is never to be exercised except in very

clear cases." *Erie & North–East Railroad Co. v. Casey,* 26 Pa. 287, 300–301 (1856). Moreover, one of the most firmly established principles of our law is that the challenging party has a heavy burden of proving an act unconstitutional. *Barud,* 545 Pa. at 304, 681 A.2d at 165. In order for an act to be declared unconstitutional, the challenging party must prove the act "clearly, palpably and plainly" violates the constitution. *Barud,* 545 Pa. at 304, 681 A.2d at 165. *See Blystone, supra.* Finally, we note that:

The power of judicial review must not be used as a means by which the courts might substitute its [sic] judgment as to public policy for that of the legislature. The role of the judiciary is not to question the wisdom of the action of [the] legislative body, but only to see that it passes constitutional muster.

*Finucane v. Pennsylvania Marketing Bd.,* 136 Pa. Commw. 272, 582 A.2d 1152, 1154 (1990) (citations omitted).

*Commonwealth v. Smith,* 732 A.2d 1226, 1235–1236 (Pa.Super.1999), *affirmed,* 575 Pa. 203, 836 A.2d 5 (2003).

¶ 18 "Therefore, in assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. . . . [A] heavy burden rests on those who would attack the judgment of the representatives of the people." *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 59, 454 A.2d 937, 960 (1982) (quoting *Commonwealth v. Story,* 497 Pa. 273, 297–298, 440 A.2d 488, 500–501 (1981) (Larsen, J. dissenting)).

---

cause he was HIV positive and may not live to see the end of his prison term, the trial court's sentence of imprisonment violated his right to be free from cruel and unusual punishment). It has long been the rule in this Commonwealth that "[c]laims concerning the illegality

of the sentence are not waivable." *Commonwealth v. Vasquez,* 560 Pa. 381, 387, 744 A.2d 1280, 1284 (2000) (quoting *Commonwealth v. Smith,* 528 Pa. 380, 384, 598 A.2d 268, 270 (1991)). Thus, we will review the merits of this issue.

¶ 19 The Pennsylvania General Assembly set forth a comprehensive statutory scheme pertaining to dispositions of criminal defendants who suffer from diminished levels of mental capacity. A verdict of guilty but mentally ill is authorized by Section 314 of the Crimes Code, which provides in pertinent part as follows:

> (a) **General rule.**—A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.

> \* \* \*

> (c) **Definitions.**—For the purposes of this section and 42 Pa.C.S. § 9727 (relating to disposition of persons found guilty but mentally ill):

>> (1) *"Mentally ill."* One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

>> *"Legal insanity."* At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong.

18 Pa.C.S.A. § 314.

■■■ ¶ 20 In *Commonwealth v. Sohmer,* 519 Pa. 200, 546 A.2d 601 (1988), the Pennsylvania Supreme Court explained that Section 314(a) does not impose a burden of proof concerning a defendant's mental illness on either party, but rather, is implicated where an insanity defense fails but evidence of the defendant's mental illness nevertheless "preponderates." *See id.* at 212–213, 546 A.2d at 607. Thus, the guilty but mentally ill verdict is available only if a defendant's proffered insanity defense does not reach the necessary *M'Naghten* standard. *Commonwealth v. Henry,* 524 Pa. 135, 149, 569 A.2d 929, 936 (1990).

¶ 21 The statute pertaining to disposition of persons found to be guilty but mentally ill provides in relevant part as follows:

> (a) **Imposition of sentence.**—A defendant found guilty but mentally ill or whose plea of guilty but mentally ill is accepted under the provisions of 18 Pa. C.S.A. § 314 (relating to guilty but mentally ill) may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense.

42 Pa.C.S.A. § 9727.

¶ 22 Our Pennsylvania Supreme Court has reiterated that "a defendant found to be guilty but mentally ill is entitled to no reduction in sentence." *Commonwealth v. Santiago,* 579 Pa. 46, 78, 855 A.2d 682, 701 (2004). Our legislature has specifically dictated that a defendant found guilty but mentally ill "may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense." *Id.* at 78–79, 855 A.2d at 701 (quoting 42 Pa.C.S.A. § 9727(a)); *see also Commonwealth v. Diaz,* 867 A.2d 1285, 1287 (Pa.Super.2005) (stating that "[t]here is no mandatory reduction in sentence because a defendant has acted due, at least in part, to mental illness").

■■■ ¶ 23 The Eighth Amendment of the United States Constitution and Article 1, § 13 of the Pennsylvania Constitution provide: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted."

The Eighth Amendment's cruel and unusual punishments clause prohibits sentences which are wholly and irrationally disproportionate to the crime. *Commonwealth v. Oree*, 911 A.2d 169, 173 (Pa.Super.2006), *appeal denied*, 591 Pa. 699, 918 A.2d 744 (2007).

¶ 24 The Pennsylvania prohibition against cruel and unusual punishment is coextensive with the Eighth and Fourteenth Amendment of the United States Constitution. *Commonwealth v. Cottam*, 420 Pa.Super. 311, 616 A.2d 988, 1003 (1992), *appeal denied*, 535 Pa. 673, 636 A.2d 632 (1993). Therefore, the Pennsylvania Constitution affords no broader protection against excessive sentences than that provided by the Eighth Amendment to the United States Constitution. *Commonwealth v. Pendola*, 416 Pa.Super. 568, 611 A.2d 761, 764 n. 2 (1992), *appeal denied*, 535 Pa. 617, 629 A.2d 1378 (1993) (citing *Commonwealth v. Spells*, 417 Pa.Super. 233, 612 A.2d 458, 461 (1992)). We also observe that successful challenges to a criminal penalty are extremely rare where the penalty is something other than capital punishment. *Commonwealth v. Strunk*, 400 Pa.Super. 25, 582 A.2d 1326, 1331 (1990), *appeal denied*, 528 Pa. 630, 598 A.2d 283 (1991) (citing *Solem v. Helm*, 463 U.S. 277, 289–290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)). The United States Supreme Court has instructed that "[b]ecause a sentence of death differs in kind from any sentence of imprisonment, no matter how long, our decisions applying the prohibition of cruel and unusual punishments to capital cases are of limited assistance in deciding the constitutionality of the punishment meted out [in noncapital cases]." *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

¶ 25 In support of his argument that defendants found to be suffering from mental illness should be treated differently, Appellant turns our attention to two United States Supreme Court cases, *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). We conclude these cases are inapposite because both cases concern the constitutional limitations on the imposition of the death penalty.

¶ 26 Appellant first cites *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), which held that execution of mentally retarded criminals violates the Eighth Amendment. When looking at the deficiencies of the mentally retarded person in conjunction with the stated purposes of capital punishment, that being retribution and deterrence, the *Atkins* Court concluded that mentally retarded individuals should be categorically excluded from execution. *Id.* at 318–319, 122 S.Ct. 2242. The concept of retribution, *i.e.*, seeing that the criminal suffers his "just desserts," will not be served by executing the mentally retarded, because mentally retarded persons, as a class, possess a diminished personal culpability for their actions. *Id.* Likewise, deterrence is not an effective method of interaction with a mentally retarded person, as they are not capable of the level of impulse control that is required to calculate the risk attendant to the decision to take a life. *Id.* at 320, 122 S.Ct. 2242. Accordingly, the Court concluded that the Eighth Amendment "places a substantive restriction on the State's power to take the life" of a mentally retarded offender. *Id.* at 321, 122 S.Ct. 2242 (quoting *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986)).

¶ 27 Appellant also cites *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), which precluded capital punishment for juvenile offenders under eighteen years of age. Pursuant to *Roper*,

the Eighth and Fourteenth Amendments to the United States Constitution prohibit the execution of a defendant who is less than eighteen years old when a crime is committed, on the belief that juveniles, generally, are less culpable for their actions. The Supreme Court reasoned that "[o]nce the diminished culpability of juveniles is recognized, it is evident that the penological justifications for the death penalty apply to them with lesser force than to adults." *Id.* at 571, 125 S.Ct. 1183. Thus, the *Roper* decision bars only the imposition of the death penalty in cases involving juvenile offenders.

¶ 28 Turning to the applicability of *Atkins*, we observe that Appellant has neither argued nor alleged that he suffers from mental retardation. Moreover, Appellant, unlike the defendant in *Atkins*, is not subject to a sentence of execution for his crime. Thus, we fail to see how *Atkins* supports Appellant's position. Likewise, it is our conclusion that *Roper* fails to support Appellant's claim. Appellant is not a juvenile, nor is Appellant subject to the death penalty, as was the defendant in *Roper*. Therefore, *Roper* is of no support to Appellant's claim. Upon review, we conclude that Appellant's reliance upon United States Supreme Court death penalty cases is misplaced and that he fails to meet his heavy burden of proving that the sentencing scheme is unconstitutional.

¶ 29 We also observe that in *Commonwealth v. duPont*, 730 A.2d 970 (Pa.Super.1999), a panel of this Court reviewed the constitutionality of the guilty but mentally ill statutory scheme, and briefly addressed the question of whether the statute exposes a defendant suffering from mental illness to cruel and unusual punishment.[4] Therein we stated the following:

> Finally with respect to the mental illness issue, appellant contends that he has been subjected to cruel and unusual punishment based on the verdict, because he has been imprisoned as a result of his mental illness. Appellant reiterates that he could be considered "insane" under the ALI definition of insanity as well as under statutes of other jurisdictions. As previously stated, appellant was found guilty but mentally ill based on application of Pennsylvania law. The jury did not determine him to be legally insane. There is no prohibition in the Constitution against punishment simply because the law in other jurisdictions differs and might yield another penalty. This argument is also without merit.

4. Our research reflects that the constitutionality of the *statutory scheme* in question has been repeatedly upheld. We note that in several instances panels of this Court determined cases in which criminal defendants, to no avail, attempted to obtain relief in their sentencing by challenging the constitutionality of the guilty but mentally ill statute. *See Commonwealth v. Zewe*, 444 Pa.Super. 17, 663 A.2d 195 (1995), *appeal denied*, 544 Pa. 629, 675 A.2d 1248 (1996) (holding that Pennsylvania's guilty but mentally ill statute comports with constitutional requirements of due process and equal protection); *Commonwealth v. Hatfield*, 397 Pa.Super. 90, 579 A.2d 945 (1990) (holding that the guilty but mentally ill statute, which allows for the admission of mental illness only if the defendant presents the affirmative defense of insanity, does not violate the equal protection clause of either the United States Constitution or the Pennsylvania Constitution); *Commonwealth v. Sematis*, 382 Pa.Super. 569, 555 A.2d 1347 (1989) (holding the defendant's claim that his sentence, entered following his plea of guilty but mentally ill, was unconstitutional lacked merit because there was no deviation permitted to the mandatory sentencing statute); *Commonwealth v. Trill*, 374 Pa.Super. 549, 543 A.2d 1106 (1988), *appeal denied*, 522 Pa. 603, 562 A.2d 826 (1989) (finding that the guilty but mentally ill statute was not unconstitutionally vague and did not violate the defendant's rights of due process or equal protection).

*duPont,* 730 A.2d at 980. In light of the foregoing, we conclude that Appellant's claim that the imposition of his sentence, following his conviction of guilty but mentally ill, exposes him to cruel and unusual punishment lacks merit.

¶ 30 Appellant last argues that the Commonwealth failed to prove beyond a reasonable doubt that he was guilty of the crime of tampering with evidence. Specifically, Appellant contends that, on the night in question, his actions of washing the knives and bedclothes do not establish that he had the requisite intent to impair any investigation.

¶ 31 When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Duncan,* 932 A.2d 226, 231 (Pa.Super.2007) (citation omitted). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id.* (quoting *Commonwealth v. Brewer,* 876 A.2d 1029, 1032 (Pa.Super.2005), *appeal denied,* 585 Pa. 685, 887 A.2d 1239 (2005)). However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. *Id.* Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. *Id.* Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented. *Commonwealth v. Hartle,* 894 A.2d 800, 804 (Pa.Super.2006).

¶ 32 The crime of tampering with or fabricating physical evidence is set forth at 18 Pa.C.S.A. § 4910, which provides as follows:

A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:

(1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation; or

(2) makes, presents or uses any record, document or thing knowing it to be false and with intent to mislead a public servant who is or may be engaged in such proceeding or investigation.

18 Pa.C.S.A. § 4910.

¶ 33 To establish the offense of tampering with evidence, the Commonwealth must prove three interrelated elements: (1) the defendant knew that an official proceeding or investigation was pending [or about to be instituted]; (2) the defendant altered, destroyed, concealed, or removed an item; and (3) the defendant did so with the intent to impair the verity or availability of the item to the proceeding or investigation. *Commonwealth v. Jones,* 904 A.2d 24, 26 (Pa.Super.2006), *appeal denied,* 591 Pa. 690, 917 A.2d 845 (2006) (citing *Commonwealth v. Morales,* 447 Pa.Super. 491, 669 A.2d 1003, 1005 (1996)) (citing 18 Pa.C.S.A. § 4910(1)).

¶ 34 Our review of the record reflects that Officer Stephen Sorage testified Appellant made the statement that he waited three hours to call the police, thus allowing himself time to clean up the home. N.T., 3/16/06, at 98. Officer Frederick Miller testified that, upon the arrival of police, Appellant "stated that he had recently come home. He had found his daughter dead. He had cleaned her up and placed flowers around her body." N.T., 3/16/06, at 42. Sergeant Gregory Foresman testified that when police discovered the vic-

tim's body, there was no bedding on the bed. N.T., 3/16/06, at 62. Officer Carl Finnerty testified that when he arrived at the scene, Appellant was doing laundry, and the dryer was running. N.T., 3/16/06, at 66. The police discovered linens and bloodstained clothing, belonging to both Appellant and the victim, drying in the dryer. N.T., 3/16/06, at 125, 126, 128, 129, 130. Also, the murder weapons were found in the kitchen sink, and appeared to have been partially washed as there was no blood on them. N.T., 3/16/06, at 45. The evidence that Appellant attempted to wash and clean certain items, although circumstantial, is sufficient to establish that Appellant intended to hinder the investigation by police. This is further supported by the fact that Appellant waited three hours to contact the police and fabricated a story to the police, claiming to have discovered his daughter's body when he entered the home. Accordingly, this final claim lacks merit.

¶ 35 Judgment of sentence affirmed.