J-A18037-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY MICHAEL FLOWERS | : | |
| | : | |
| Appellant | : | No. 35 WDA 2017 |

Appeal from the Judgment of Sentence December 22, 2015
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0002589-2012

BEFORE:   BOWES, LAZARUS and OTT, JJ.

MEMORANDUM BY OTT, J.:                    FILED OCTOBER 17, 2017

Anthony Michael Flowers appeals, nunc pro tunc, from the judgment of sentence imposed on December 22, 2015, in the Westmoreland County Court of Common Pleas.  The trial court sentenced Flowers to an aggregate term of two and one-half to five years' imprisonment and two years' consecutive probation, after the revocation of his sentence of intermediate punishment imposed following Flowers' guilty plea to charges of attempted rape, unlawful restraint and simple assault (two counts).[1]  On appeal, Flowers contends the court's reasons for revoking his intermediate punishment sentence, as well as the new sentence imposed, constitute cruel and unusual punishment, and,

_____

[1] See 18 Pa.C.S. §§ 901/3121(a)(1), 2902(a)(1), and 2701(a)(1), (a)(3), respectively.

alternatively, argues the trial court abused its discretion in imposing the new sentence. For the reasons below, we affirm.

The facts underlying Flowers' guilty plea are as follows.[2] On June 25, 2012, at approximately 1:00 p.m., the victim was walking along the Five Star Trail in Greensburg, Pennsylvania, when a man, later identified as Flowers, approached her and asked if she had a cell phone. The victim replied in the negative and continued walking. Thereafter, Flowers grabbed her hand and "started dragging her off the trail to a gravel parking lot[.]" Criminal Complaint, 6/25/2012, Affidavit of Probable Cause at 1. The victim began kicking and screaming, and briefly escaped Flowers' grip. However, Flowers then grabbed her leg and continued to try to drag her off the trail. He eventually let go, and asked the victim if she "wanted to have sex with [him]." Id. When she replied no, Flowers asked her why. At that point, the victim ran away. She later identified Flowers as her attacker.

Flowers was charged with attempted rape, unlawful restraint, and two counts of simple assault. On November 1, 2012, pursuant to a defense request, the trial court ordered Flowers to undergo a competency evaluation at Torrence State Mental Hospital. He remained at the hospital until at least early 2013. Thereafter, on November 21, 2013, Flowers entered a guilty plea

_____

[2] We note the transcript from the guilty plea hearing was not included in the certified record. Therefore, we have gleaned these facts from the probable cause affidavit attached to the criminal complaint. See Criminal Complaint, 6/25/2012, Affidavit of Probable Cause at 1.

- 2 -

to all charges. His sentencing was deferred pending a SORNA[3] assessment.[4] Subsequently, on February 18, 2014, the trial court sentenced Flowers as follows: (1) on the count of attempted rape, a term of two years county intermediate punishment with electronic home monitoring; and (2) on the count of unlawful restraint, a term of two years consecutive probation. Flowers was also required to continue sex offender treatment. No further punishment was imposed on the simple assault charges.[5]

A bench warrant was issued for Flowers on June 10, 2014, asserting (1) he was unsuccessfully discharged from his sex offender treatment program on April 29, 2014; and (2) he had a "violent episode" on May 16, 2014, while on electronic home monitoring, which resulted in "a 302 commitment."[6] See Order for Warrant of Arrest and To Detain, 6/10/2014. Flowers appeared for a revocation hearing on June 24, 2014.

At the hearing, the Commonwealth presented the testimony of Dawn Smitley, Flowers' therapist at the sex offender treatment center. Smitley testified that she met with Flowers three times per week for 30 days, from

_____

[3] See Sexual Offenders Registration and Notification Act, 42 Pa.C.S. §§ 9799.10-9799.41.

[4] The trial court released Flowers on electronic home monitoring pending his sentencing hearing. See Order, 11/21/2013.

[5] It appears from the record that Flowers was not found to have met the criteria for classification as a sexually violent predator under SORNA. See Order, 2/18/2014. See also 42 Pa.C.S. § 9799.24 (Assessments).

[6] See 50 P.S. § 7302 (providing for 120-hour involuntary commitment of severely mentally disabled person in need of immediate treatment).

March 27, 2014, until April 29, 2014. Smitley noted that while Flowers was receptive to treatment, he was dismissed from the program because "his mental health and low IQ prohibit [him] from learning abstract concepts." N.T., 6/24/2014, at 9. She explained:

> So he's not able to process beyond I did this. And when it's why did you do this, it's I don't know why I did that, I wasn't thinking. He can't process the abstract of I did this because there was a sexual[] motivation behind it or any of the other reasons that we might hear.

Id. Smitley conceded Flowers' discharge was through no fault of his own, stating "I believe he's hindered by things that are – some of the things are outside of his control, yes." Id. at 13. Smitley further explained that due to Flowers' mental health issues, which include anger outbursts, he would better benefit from "an in-patient setting where he has repetitive reinforcement of concepts because he seems to learn better with repetition and reminders regularly." Id. at 9. However, she admitted she was not aware of a program that could meet Flowers' specific needs. See id. Similarly, Flowers' Westmoreland County case manager, Nancy Packe, testified she was also unaware of any inpatient or outpatient programs that could address Flowers' issues. See id. at 18.

With regard to the alleged May 2014 violent episode, the Commonwealth called Flowers' county probation officer, Dawn Miletics.

Miletics testified the incident was explained to her by Flowers' mother as follows:[7]

> She just said that the evening that it occurred that because he was not on his medication at the time, he became out of control. He threw an iron at this elderly uncle that lives with him, he got into a physical altercation with his younger brother who lives there where there was a broom involved with [Flowers] hitting him with the broom, and that they had to call the police on two occasions that evening. The second time [the police] finally took him away.

Id. at 21. Miletics further testified that Flowers was not charged with any crimes as a result of the incident, and voluntarily submitted to his commitment when he was taken to the hospital. See id. at 22.

At the conclusion of the testimony, the trial court continued the detainer so that defense counsel could determine if any outpatient programs were available that could benefit Flowers. See id. at 26-27. Moreover, the court specifically directed Miletics to speak with Flowers' mother "and find out what the circumstances are there, whether [Flowers] can be returned to the home on electronic monitoring." Id. at 26. In addition, the trial court vacated the requirement that Flowers participate in sex offender treatment. See id. at 25.

_____

[7] Miletics informed the trial court that Flowers' mother told her she would be present at the hearing. N.T., 6/24/2014, at 20-21. However, his mother failed to appear. The trial court acknowledged that Milectis's testimony did not "rise to the level of evidence," but the court considered it for "context." Id. at 21.

- 5 -

In February of 2015, Flowers was, once again, committed to Torrence State Hospital for a forensic evaluation. His 60-day commitment was extended in March 2015, and again, in June 2015.

On November 13, 2015, the trial court conducted a revocation/re-sentencing hearing. During the hearing, the court recognized that Flowers was wearing a yellow uniform, which indicated he had a discipline issue. Flowers told the court that he had threatened to "slice [the] throat" of a deputy warden in the jail. N.T., 11/13/2015, at 7. Moreover, he stated he was taking his medication at the time of that incident. See id. at 7-8. Flowers' caseworker, Packe, testified she had been unable to locate a supervised "mental health placement" that would accept "a person who has to register with Megan's Law." Id. at 10. Both Packe and Flowers' counsel indicated the difficulty in finding appropriate treatment for Flowers was a combination of his conviction of sexual offenses and the lack of funding. See id. at 11-12.

At the conclusion of the hearing, the trial court revoked Flowers' sentence of intermediate punishment and re-sentenced him to an aggregate term of two and one-half to five years' imprisonment, followed by two years' probation.[8] The court also re-imposed the requirement that Flowers attend

---

[8] The court imposed the prison term for the charge of attempted rape, and the probationary term for the charge of unlawful restraint. It merits mention that the two and one-half year minimum sentence fell within the mitigated range of the sentencing guidelines. See N.T., 11/13/2015, at 5.

sex offender treatment.[9]   Flowers filed a timely post-sentence motion asserting the trial court abused its discretion by (1) requiring him to "continue with sex offender's treatment when he already had been discharged through no fault of his own[;]" and (2) sentencing him "to state prison when the only credible admissible evidence presented to the Court in support of revocation" was that he was discharged from sex offender treatment because he lacked the mental capacity to benefit from it.  Post Trial Motions, 11/23/2015, at ¶¶ 11-12.  As a result, Flowers argued his sentence constituted cruel and unusual punishment under the Eighth Amendment.  See U.S. Const. amend. VIII.  By order dated November 25, 2015, the trial court granted Flowers' motion and vacated his sentence.  A re-sentencing hearing was scheduled for December 22, 2015.

At the re-sentencing hearing, Miletics updated the trial court regarding an incident involving Flowers in prison, namely, that on December 17, 2015, Flowers punched another inmate in the face.  Counsel attempted to mitigate Flowers' behavior by explaining he was provoked when the other inmate spit

_____

[9] We note that, for reasons that do not appear in the record, Flowers' revocation/re-sentencing hearing was reassigned to Judge Christopher Feliciani, although President Judge Richard McCormick, Jr., had presided over Flowers' guilty plea and June 2014 detainer hearing.  With regard to the requirement that Flowers participate in sex offender treatment, counsel informed Judge Feliciani that Flowers' was unable to benefit due to his mental health issues, but the judge stated "he'll have to try again," noting "[m]aybe they have another program at SCI that can help with the sex offender treatment."  Id. at 15.

- 7 -

on him. See N.T., 12/22/2015, at 4-5. Counsel further informed the court that Flowers' parents "want him in treatment." Id. at 6. Thereafter, the trial court re-imposed the sentence of two and one-half to five years' imprisonment, and a consecutive two years' probation. However, the court omitted the requirement that Flowers participate in sex offender treatment.[10]

On December 31, 2015, Flowers filed another post-sentence motion seeking reconsideration of his sentencing. Specifically, he claimed his sentence was violative of the Eighth Amendment because he was punished for violating a condition it was impossible for him to fulfill. Further, he argued the sentence of imprisonment was excessive and disproportionate to his original sentence which included intermediate punishment and electronic home monitoring. The court denied Flowers' motion that same day. This nunc pro tunc appeal followed.[11]

_____

[10] The court also ordered Flowers receive 1091 days' credit for time-served.

[11] On February 18, 2016, the trial court ordered Flowers to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Flowers complied with the court's directive, and filed a concise statement on March 9, 2016.

On December 2, 2016, a panel of this Court quashed Flowers' appeal because it was untimely filed. See Commonwealth v. Flowers, ___ A.3d ___ [165 WDA 2016] (Pa. Super. 2016). Indeed, counsel had filed the notice of appeal one day late, on January 22, 2016. Thereafter, Flowers petitioned the trial court for permission to appeal nunc pro tunc. The court granted the motion on December 7, 2016, and this appeal follows.

In his first issue on appeal, Flowers argues the revocation of his intermediate punishment sentence violated his constitutional right against cruel and unusual punishments. See Flowers' Brief at 12. He explains:

> The sentence from its outset imposed a condition of compliance which was not possible for Flowers to ever achieve despite his best efforts. The establishment of a sentencing condition that can never be fulfilled and which is neither possible nor within a defendant's ability to satisfy is exacting a punishment which is in its very essence cruel.

Id. at 13. Flowers emphasizes he was discharged from sex offender treatment not because he failed to participate, but rather, because he was "not sufficiently intelligent to 'benefit' from the program." Id. Accordingly, Flowers insists he is entitled to reinstatement of a sentence of intermediate punishment. See id. at 14.

Pursuant to 42 Pa.C.S. § 9773, a trial court may "revoke a sentence of county intermediate punishment upon proof of a violation of specific conditions of the sentence." 42 Pa.C.S. § 9773(b). Furthermore, subsection (c) mandates that before doing so, the trial court must conduct a hearing "at which the court shall consider the record of the initial sentencing proceeding as well as the conduct of the defendant while serving a sentence of county intermediate punishment." 42 Pa.C.S. § 9773(c).

Here, Flowers argues the court's revocation of his intermediate punishment sentence constituted cruel and unusual punishment. Both the Eighth Amendment of the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution, forbid the imposition of "cruel and unusual

punishments." U.S. Const., amend. VIII; Pa. Const., Art. 1, Sec. 13. See Commonwealth v. Spells, 612 A.2d 458, 461 (Pa. Super. 1992) (the guarantee against cruel punishment in the state and federal constitutions is coextensive), appeal dismissed as improvidently granted, 643 A.2d 1078 (Pa. 1994). This Court has explained that a punishment is cruel and unusual if it is "wholly and irrationally disproportionate to the crime,"[12] or, in other words, "so greatly disproportionate to an offense as to offend evolving standards of decency or a balanced sense of justice." Commonwealth v. Ehrsam, 512 A.2d 1199, 1210 (Pa. Super. 1986) (mandatory minimum five year sentence for offenses committed with firearm did not violate Eighth Amendment), appeal denied, 527 A.2d 535 (Pa. 1987), cert. denied, 439 U.S. 932 (1989).

The underlying premise of Flowers' argument is that the trial court revoked his intermediate punishment sentence solely on the basis of his inability to benefit from sex offender treatment. See Flowers' Brief at 13. However, our review of the record reveals the court's revocation order was not so limited. Rather, in revoking the intermediate punishment sentence, the court considered the facts that: (1) there were no outpatient mental health programs available that could address Flowers' special needs, and (2) even when Flowers took his medication (which he frequently ran out of) he still experienced violent outbursts. See N.T., 6/24/2014, at 4-5, 9-10,18, 21-22; N.T., 11/13/2015, at 7-9, 10-11. Based upon these facts, we do not find

_____

[12] Commonwealth v. Yasipour, 957 A.2d 734, 743 (Pa. Super. 2008), appeal denied, 980 A.2d 111 (Pa. 2009).

the court's revocation of Flowers' intermediate punishment sentence constituted cruel and unusual punishment. It was clear from the testimony at all three sentencing/re-sentencing hearings that Flowers was unable to adhere to the conditions of his electronic home monitoring release. Accordingly, his first issue fails.

Second, in a related claim, Flowers insists that the court's imposition of a sentence of state incarceration constituted cruel and unusual punishment as it was inherently disproportional to the original sentence, county intermediate punishment, thereby violating his Eighth Amendment rights. See Flowers' Brief at 15. Flowers notes the original sentence "allows for rehabilitation and a home residence," while the new sentence "requires placement in a state prison for several years." Id. Moreover, he repeats his assertion that the "only change in circumstance" was his intellectual inability to complete sex offender treatment. Id.

We note that a challenge to the constitutionality of a sentence "on a claim that it violates [a defendant's] right to be free from cruel and unusual punishment raises a legality of sentencing claim since he is challenging the trial court's authority in imposing the sentence." See Yasipour, supra, 957 A.2d at 740. The focus of an Eighth Amendment challenge is whether the sentence imposed is "grossly disproportionate to a crime." Spells, supra, 612 A.2d at 463, quoting Harmelin v. Michigan, 501 U.S. 957, 1005 (1991). However, successful Eighth Amendment challenges are "extremely rare where the penalty is something other than capital punishment." Yasipour, supra,

957 A.2d at 743. See id. (imposition of 20 to 40 year sentence for third-degree murder, following guilty but mentally ill verdict, did not violate Eighth Amendment).

As noted above, Flowers focuses on the purported disproportionality between his original intermediate punishment sentence and his subsequent term of incarceration. However, the trial court, in its opinion, determined the prison sentence was not disproportionate "in light of [Flowers'] charges, current mental health, and the surrounding circumstances." Trial Court Opinion, 3/23/2016, at 5. We find no reason to disagree.

Here, Flowers pled guilty to attempted rape. Indeed, he tried to drag the victim, against her will, from a walking trail in order to have sex with her. Accordingly, Flowers committed a serious offense. Moreover, while the court initially permitted Flowers to serve his sentence in a less restrictive environment (i.e., county intermediate punishment), it soon became apparent that Flowers needed structured mental health treatment and more constraints on his liberty due to his continued violent outbursts. As explained above, the court considered much more than Flowers' inability to benefit from sex offender treatment. Therefore, we find the court's imposition of a mitigated range sentence following revocation of Flowers' intermediate punishment sentence did not violate his constitutional right to be free from cruel and unusual punishment.

Lastly, Flowers contends the trial court abused its discretion when it failed to consider the factors listed in 42 Pa.C.S. § 9771(c) before imposing a

sentence of total confinement, and, in doing so, relied upon an impermissible factor, namely Flowers' inability to complete sex offender treatment. See Flowers' Brief at 16-17. This issue challenges the discretionary aspects of his sentence.

A challenge to the discretionary aspects of a sentence is not absolute, but rather, "must be considered a petition for permission to appeal." Commonwealth v. Best, 120 A.3d 329, 348 (Pa. Super. 2015) (quotation omitted). In order to reach the merits of such a claim, this Court must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

Commonwealth v. Edwards, 71 A.3d 323, 329-330 (Pa. Super. 2013) (quotation omitted), appeal denied, 81 A.3d 75 (Pa. 2013).

Flowers complied with the procedural requirements for this appeal by filing a timely post-sentence motion for modification of sentence, and subsequent notice of appeal, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to Commonwealth v. Tuladziecki, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f). Therefore, we must determine whether he has raised a substantial question justifying our review.

A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." Commonwealth v. Ventura, 975 A.2d 1128, 1133 (Pa. Super. 2009), appeal denied, 987 A.2d 161 (Pa. 2009) (citation omitted). An allegation that the trial court failed to consider the requirements of Section 9771(c) before imposing a sentence of total confinement raises a substantial question that the sentence imposed was "inconsistent with a specific provision of the Sentencing Code." Id. Accordingly, we proceed to an evaluation of Flowers' claim on appeal.

The Sentencing Code provides that, similar to the revocation of a probationary sentence, when a trial court revokes a county intermediate punishment sentence, "the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing." 42 Pa.C.S. § 9773(b). Moreover, Section 9771(c) precludes a trial court from imposing a sentence of total confinement upon revocation of probation unless the court finds one or more of the following:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S. § 9771(c). Flowers maintains that "[n]one of the factors set forth in Section 9771(c) are present in this case." Flowers' Brief at 17. We disagree.

We recognize the trial court did not explicitly apply the Section 9771(c) factors before imposing Flowers' sentence. Nevertheless, we do not agree with Flowers that none of the factors were present under the facts of his case. See Flowers' Brief at 17. While it is true he was not convicted of another crime, his mental health impairments, coupled with his violent outbursts, make it likely he would commit another crime if he were not imprisoned. Indeed, after reciting the "instances of aggression" Flowers exhibited following his intermediate punishment sentence, the trial court opined:

> Due to the nature of the charges and Mr. Flower[s'] violent history this Court is of the opinion that the sentence imposed was appropriate and within the sentencing guidelines. Additionally, the court ordered the state correctional institution to take notice of Mr. Flowers' mental health condition and make every attempt to place him in a high impact mental health treatment facility. N.T. 12/22/15 at 9.

Trial Court Opinion, 3/23/2016, at 5.

Considering Flowers' continued violent outbursts both while on and off his medication, as well as the lack of suitable outpatient mental health treatment for him despite the court's diligent efforts to find an appropriate placement, we find the trial court did not err or abuse its discretion in imposing a mitigated range sentence of incarceration following the revocation of his

intermediate punishment sentence.[13]    Therefore, Flowers' final claim is

meritless.

Judgment of sentence affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/17/2017

_____

[13] Our review of the record reveals that Packe and defense counsel researched at least 15 placements for Flowers, none of which could accommodate his special needs. See N.T., 11/13/2015, at 10-11.   Indeed, Flowers's case presents a perfect storm of (1) serious charges which require him to register as a sex offender, (2) violent behavior which remains largely untreatable, (3) a lack of capacity to conceptually change his behavior due to mental impairments, and (4) the lack of funding which would afform him placement in certain facilities outside of prison.   We share the frustration evidenced by the trial court that the sentence imposed may still not address the underlying mental health issues that appear to be the impetus of Flowers's behavior.