**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCELL LEWIS | : | |
| | : | |
| Appellant | : | No. 10 MDA 2023 |

Appeal from the Judgment of Sentence Entered December 19, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0002311-2018

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED: SEPTEMBER 11, 2023**

Appellant, Marcell Lewis, appeals from the aggregate judgment of sentence of 30 to 60 months' incarceration, as well as a concurrent term of 24 months' probation, imposed after a jury convicted him of persons not to possess a firearm and tampering with evidence ("TWE").  On appeal, Appellant solely challenges the sufficiency of the evidence to sustain his TWE conviction. After careful review, we affirm.

The trial court summarized the facts established at Appellant's trial, as follows:

> On the afternoon of October 16, 2017, 911 dispatchers received a total of five calls from three different locations regarding a shooting in the vicinity of Herr Street in the City of Harrisburg.  The first two calls, which both came in around 4:39 p.m., were placed from a gas station-convenience store located at 1951 Herr Street.  The first two calls indicated that a man had

---

[*] Former Justice specially assigned to the Superior Court.

fallen in the convenience store, was injured, and was unable to talk. The third call, which came from Harrisburg Dairies at 2001 Herr Street, was from an individual reporting that multiple shots had been fired around the area and that there were shell casings laying in the area. That caller reported that there were multiple people in the area, but he had not witnessed the shooting. The fourth call was another call from the gas station, coming from someone who had pulled in to get gas. Finally, the fifth call came from a doctor at Harrisburg Hospital, who reported that a gunshot victim had arrived at the hospital with a gunshot wound to the leg. That gunshot victim at the hospital was ultimately identified as Charles Cook.

In response to the 911 calls, various officers were dispatched to Harrisburg Dairies at 2001 Herr Street, while other officers responded to the convenience store at 1951 Herr Street. Among the law enforcement officials responding to Harrisburg Dairies was Michael Maurer ("Maurer"), a forensics investigator with the Harrisburg Bureau of Police who testified at the trial. When Maurer arrived to Harrisburg Dairies, the scene had been secured with crime scene tape, and after being briefed by Harrisburg police officers, he began searching the scene for evidence. Maurer found multiple 9 mm casings, multiple .40 caliber casings, some bullets, and some bullet jacketing. Maurer also observed blood at the scene.

Among the officers responding to the gas station-convenience store at 1951 Herr Street was Patrol Officer Cynthia Kreiser (…"Officer Kreiser" or "Kreiser") of the Harrisburg City Police Department. Upon arrival to the scene, Officer Kreiser and Officer Pirkle (who had also responded to the incident) observed Appellant lying on the floor inside of the store with blood on his shirt and the upper left sleeve of his jacket. Officer Pirkle cut open Appellant's jacket in an attempt to treat him until EMS arrived, and he and Officer Kreiser asked Appellant who had shot him[.] … Appellant responded that he did not know. Kreiser also asked Appellant for his birth date, but Appellant was fading in and out of consciousness.

Soon after Officer Kreiser and Officer Pirkle arrived on the scene, EMS arrived and began tending to Appellant. At this point, Officer Kreiser resumed her investigation by speaking to two store employees about what they had observed. The employees stated that Appellant had come into the store, asked them to call the police, and then Appellant collapsed onto the floor. One of the

employees then provided Officer Kreiser with surveillance video footage which showed the exterior of the store and Appellant's actions prior to entering the store. In that video, Appellant ran into the frame from the east side of the store and then ran along the back side of the store where he tossed something from his right hand into some brush in a wooded area. Appellant then came around and entered the store on the west side.

After observing the surveillance video, Officer Kreiser apprised Corporal Henry (another officer responding to the incident) about the object that Appellant had thrown into the brush on the surveillance video. Officer Kreiser and Corporal Henry then looked at the brush and observed a black firearm laying therein. Corporal Henry stood by the firearm, a Springfield .40 caliber semiautomatic pistol, until forensics investigator Maurer collected it for placement into evidence. Maurer observed blood located on various locations of the firearm, and forensic testing established that the blood belonged to Appellant. Ballistics report concluded that the firearm was operable and capable of discharging the type of ammunition for which it was manufactured. Maurer and a data technician used a database to verify ownership of the firearm. They determined that someone other than Appellant was the registered owner of the firearm, but the firearm had been reported stolen on April 27, 2014. Counsel agreed by stipulation that on June 30, 2009, Appellant had been convicted of Possession with Intent to Deliver a Controlled Substance and that on account of such prior conviction, Appellant was prohibited by law from possessing a firearm.

Appellant chose to testify on his own behalf at trial. Appellant recounted his recollection of the events that transpired on October 16, 2017. According to Appellant, on the afternoon in question, he had driven to a car wash in his black Infiniti and then traveled to a mechanic shop located at Poplar and Herr Streets. As Appellant exited his car at the rear of the mechanic shop, he proceeded to the trunk of his car, where two males with hoods approached him with guns. One gun was shoved into Appellant's chest, and the second gun was shoved into his face. Appellant recalled that he made a jerking motion, and he was shot in the chest area. He then took off running as bullets continued to fly around him and hit other objects. Appellant recalled running to the area of the gas station, but he did not specifically remember entering the convenience store, nor did he remember police treating him at all. He recalled spending seven days in the hospital, and that when he first woke up in the hospital, he could

not talk or move. He also recalled that he lost a lot of blood. When asked on direct examination, Appellant denied having a gun with him on the day in question. However, on cross-examination, when asked about the convenience store surveillance video, Appellant did not deny that it was him in the surveillance video running across the parking lot into the gas station. Moreover, he did not deny that it was him in the video that went back by the bushes, where he tossed an object and where the .40 caliber pistol was found shortly thereafter.

Trial Court Opinion ("TCO"), 2/28/23, at 2-5 (citations to the record omitted).

Based on this evidence, the jury convicted Appellant of the above-stated offenses. On December 19, 2022, the court sentenced him to the aggregate term set forth *supra*. Appellant filed a timely notice of appeal, and he complied with the trial court's subsequent order for him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on February 28, 2023. Herein, Appellant states one issue for our review: "Whether the Commonwealth failed to present sufficient evidence that [Appellant] believed an official investigation was underway or about to be initiated when he was a gunshot victim and he disposed of a firearm to prevent his simultaneous prosecution for person not to possess[?]" Appellant's Brief at 6.

To begin, we note our standard of review for a challenge to the sufficiency of the evidence:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno***, 14 A.3d 133[, 136] (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact

finder. ***Commonwealth v. Hartzell***, 988 A.2d 141[, 143] (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

In the instant case, Appellant challenges the sufficiency of the evidence to sustain his conviction of TWE. That offense is defined as follows:

> A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:
>
> > (1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation; or
> >
> > (2) makes, presents or uses any record, document or thing knowing it to be false and with intent to mislead a public servant who is or may be engaged in such proceeding or investigation.

18 Pa.C.S. § 4910. Thus,

> [t]o establish the offense of tampering with evidence, the Commonwealth must prove three interrelated elements: (1) the defendant knew that an official proceeding or investigation was pending (or about to be instituted); (2) the defendant altered, destroyed, concealed, or removed an item; and (3) the defendant did so with the intent to impair the verity or availability of the item to the proceeding or investigation."

***Commonwealth v. Toomer***, 159 A.3d 956, 961 (Pa. Super. 2017) (citation omitted).

In this case, Appellant solely avers that the Commonwealth's evidence failed to prove that he believed an official proceeding or investigation was pending or about to be instituted when he discarded the firearm. According to Appellant, he "threw a handgun, and then went into the gas station seeking

aid. … [N]o evidence was provided that he believed he would be investigated criminally; rather, his intent was to acquire medical attention." Appellant's Brief at 15. Appellant stresses that there was no evidence he was deceptive about his discarding the gun, as in other cases where we upheld convictions for TWE. Specifically, Appellant cites *Commonwealth v. Yasipour*, 957 A.2d 734 (Pa. Super. 2008), and *Toomer*, *supra*, claiming that these cases establish that it is "deception coupled with … concealment" that is required to sustain a conviction for TWE. Appellant's Brief at 20.

We disagree. First, in *Yasipour*, the evidence showed that Yasipour murdered his daughter, and then washed and cleaned the items he used to kill her before calling the police three hours after the victim's death. *Yasipour*, 957 A.2d at 746. Once police arrived, Yasipour "fabricated a story…, claiming to have discovered his daughter's body when he entered the home." *Id.* Yasipour was convicted of TWE, and he challenged the sufficiency of the evidence to sustain that conviction on appeal. We affirmed, stating that "[t]he evidence that [Yasipour] attempted to wash and clean certain items, although circumstantial, is sufficient to establish that [Yasipour] intended to hinder the investigation by police." *Id.* We then explained that our conclusion was **supported by** — not premised on — Yasipour's delay in contacting the police and his fabricated story once they arrived. *Id.*

Second, in *Toomer*, Toomer (who was not licensed to carry a firearm) accidentally shot his friend. *Toomer*, 159 A.3d at 958. While Toomer's wife drove the friend to the hospital, Toomer took the gun to the couple's

- 6 -

apartment. *Id.* at 959. When the police arrived at the hospital to investigate the shooting, Toomer's wife gave them permission to search the couple's apartment, where the gun was found. *Id.* Toomer initially told police that his wife had shot the friend, but then confessed that he had been the shooter. *Id.* Toomer was ultimately charged and convicted of TWE, and claimed on appeal that the evidence was insufficient to prove that knew police would investigate the shooting when he took the gun to his apartment. *Id.* at 962. We rejected Toomer's argument, reasoning that,

> based upon the totality of the circumstances, a jury could have reasonably inferred that Toomer knew the police would immediately begin investigating [the friend's] shooting once he appeared at the hospital with a gunshot wound. The jury could also have reasonably inferred that, knowing a police investigation would ensue, Toomer decided to dispose of the weapons in an attempt to conceal his involvement in [the] shooting. Such an inference is particularly reasonable in light of Detective Jensen's testimony that Toomer initially lied and told him that [Toomer's wife] had been in possession of the firearm when it discharged.

*Id.*

According to Appellant,

> [b]oth *Yasipour* and *Toomer* instruct that deceptive acts, such as lying and manipulation of items[,] constitute sufficient evidence to provide evidence of intent to subvert a potential investigation. However, both those cases involve a defendant who affirmatively attempted to deceive police during an investigation. While the *act* of concealment is a circumstance the jury can consider, in both *Yasipour* and *Toomer*[,] it was accompanied with conduct attempting to deflect from continued investigation. Thus, it was deception[,] coupled with the concealment and either ignoring or attempts to minimize the discovered tampered evidence[,] which provided evidence that the defendant knew an investigation was coupled [*sic*].

- 7 -

Appellant's Brief at 19-20 (emphasis in original).

Appellant's interpretation of the holdings of **Yasipour** and **Toomer** is unconvincing. In both cases, we found that, aside from Yasipour's and Toomer's later fabrications to police, the circumstances were sufficient to infer that they both knew an investigation was about to commence when they destroyed or concealed evidence. Their deception after the investigations began merely bolstered the reasonableness of those inferences.

Here, while there is no proof that Appellant lied to police after the investigation commenced, the evidence was nevertheless sufficient for the jury to reasonably infer that he knew an investigation was about to ensue when he discarded the firearm. As the trial court observed:

> Like [in **Toomer**], Appellant in this matter was not permitted to carry a firearm but was in possession of a firearm. Additionally, Appellant had been involved in a shooting, and much like Toomer knew that police would initiate an investigation once his friend appeared at a hospital for medical attention, it was reasonable for the jury to infer that Appellant knew the police would likely be initiating an investigation once the convenience store clerks called the authorities and EMTs and officers arrived at the store to tend to him. In this vein, it was reasonable for the jury to infer that Appellant's attempted disposal of the pistol into the brush behind the gas station was an attempt to conceal his firearm[,] which he knew police would likely find on his person once they showed up to tend to him medically and investigate how the shooting had precipitated.

TCO at 9.

We agree with the court. We also stress that the store employees told Officer Kreiser that Appellant "asked them to call the police" before collapsing. **Id.** at 3. Thus, it was reasonable for the jury to infer that if Appellant was

running to the store for the purpose of asking the employees to call the police, he knew an investigation into the shooting was about to commence at the time he discarded the weapon he was not lawfully permitted to possess. Accordingly, Appellant's conviction for TWE is supported by adequate evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2023