J-S50002-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                     :              PENNSYLVANIA
                                     :

                  v.                     :
                                     :
                                     :

JOHN CLARKE                         :
                                     :

              Appellant        :     No. 1136 EDA 2020

Appeal from the PCRA Order Entered April 7, 2020
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0003240-2011

BEFORE:   BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED:  MARCH 1, 2021**

Appellant, John Clarke, appeals from the order dismissing his *pro se* petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

The PCRA court summarized the procedural history of this case as follows:

> On April 28, 2011[,] Appellant was charged with approximately twenty-five counts of various sexual assault offenses, including rape, aggravated indecent assault[,] and involuntary deviate sexual intercourse, for the regular and repeated abuse of [three minor victims].  On January 22, 2013[,] following a lengthy and protracted jury trial, the jury convicted Appellant on three counts of endangering the welfare of children and three counts of corruption of minors[,] and acquitted Appellant on one count of aggravated indecent assault[.] … [T]he jury remained hung on the remaining charges and the court declared a mistrial on those counts.  On August 16, 2013[,] following Appellant's second lengthy and protracted jury trial, the jury convicted Appellant on

---

[*] Retired Senior Judge assigned to the Superior Court.

one count of rape by forcible compulsion, one count of involuntary deviate sexual intercourse of a child under 13 years of age, two counts of aggravated indecent assault of a child under 16 years of age, [and] one count of aggravated indecent assault. On November 26, 2013[,] the court sentenced Appellant to serve [17-34 years' incarceration], with the specific condition of Appellant's lifetime registration under Megan's law. Appellant did not file any post[-]sentence motions, but on December 23, 2013[,] Appellant filed a notice of appeal. On December 2, 2014[, his] judgment of sentence was affirmed. Appellant filed a petition for allowance of appeal, and on June 10, 2015[,] the Supreme Court denied Appellant's petition.

On May 30, 2016[,] Appellant timely filed a *pro se* [PCRA petition], and on September 22, 2016[, the PCRA court entered] an order appointing Henry DiBenedetto-Forrest, Esquire[,] to represent Appellant…. On November 27, 2019, counsel filed a No[-]Merit letter under … **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988)[, and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*)].[1] On December 20, 2019[,] Appellant filed [a response to the No-Merit Letter,] and on February 25, 2020[,] counsel sent a letter to this court indicating [that] Appellant's opposition did not alter his analysis, evaluation, or conclusion regarding Appellant's *pro se* PCRA petition. On March 3, 2020[,] a [Pa.R.Crim.P. 907] notice of intent to dismiss the *pro se* PCRA petition was sent to Appellant[,] and on April 7, 2020, [the PCRA court entered] an order denying and dismissing Appellant's *pro se* PCRA petition…. On May 11, 2020, Appellant[ filed a] *pro se* notice of appeal….

PCRA Court Opinion ("PCO"), 6/29/20, at 1-3 (footnotes and some citations omitted).

Appellant now presents the following issue for review:

[The] PCRA court erred as a matter of law in its failure to comply with the dictates of … **Finley** … and … **Turner**[,] in allowing PCRA counsel to file a deficient No-Merit Letter[,] and in adopting the same in denying [Appellant]'s PCRA petition absent an evidentiary hearing, depriving him of his rule-based right to counsel and

---

[1] Hereinafter, "No-Merit Letter."

meaningful review of his claims, in violation of federal due process and equal protection entitlements under the U.S. Constitution.

Appellant's Brief at ii (unnecessary capitalization omitted).

> In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error. We pay great deference to the findings of the PCRA court, but its legal determinations are subject to our plenary review.

***Commonwealth v. Matias***, 63 A.3d 807, 810 (Pa. Super. 2013) (cleaned up).

Instantly, Appellant challenges the PCRA court's acceptance of Attorney DiBenedetto-Forrest's No-Merit Letter, which the court adopted as the basis for its denial of Appellant's *pro se* PCRA petition. The traditional requirements for proper withdrawal of PCRA counsel, originally set forth in ***Finley***, were updated by this Court in ***Commonwealth v. Friend***, 896 A.2d 607 (Pa. Super. 2006), *abrogated by* ***Commonwealth v. Pitts***, 981 A.2d 875 (Pa. 2009),[2] which provides:

> 1) As part of an application to withdraw as counsel, PCRA counsel must attach to the application a "no-merit" letter[;]
>
> 2) PCRA counsel must, in the "no-merit" letter, list each claim the petitioner wishes to have reviewed, and detail the nature and extent of counsel's review of the merits of each of those claims[;]

---

[2] In ***Pitts***, our Supreme Court abrogated ***Friend*** "[t]o the extent ***Friend*** stands for the proposition that an appellate court may *sua sponte* review the sufficiency of a no-merit letter when the defendant has not raised such issue." ***Pitts***, 981 A.2d at 879. Here, Appellant preserved his challenge to Attorney DiBenedetto-Forrest's No-Merit Letter in the PCRA court, and now challenges the sufficiency of that letter on appellate review. Accordingly, ***Pitts*** is inapplicable.

3) PCRA counsel must set forth in the "no-merit" letter an explanation of why the petitioner's issues are meritless[;]

4) PCRA counsel must contemporaneously forward to the petitioner a copy of the application to withdraw, which must include (i) a copy of both the "no-merit" letter, and (ii) a statement advising the PCRA petitioner that, in the event the trial court grants the application of counsel to withdraw, the petitioner has the right to proceed pro se, or with the assistance of privately retained counsel;

5) the court must conduct its own independent review of the record in the light of the PCRA petition and the issues set forth therein, as well as of the contents of the petition of PCRA counsel to withdraw; and

6) the court must agree with counsel that the petition is meritless.

*Friend*, 896 A.2d at 615 (footnote omitted).

Appellant presents numerous sub-claims as to why the PCRA court erred in accepting the No-Merit Letter. With regard to the *Friend* standard, Appellant's arguments are primarily focused on the fifth and sixth *Friend* factors, as he generally asserts that the PCRA court erred in its review of the No-Merit Letter by agreeing with counsel that each of Appellant's claims was meritless. He also argues that PCRA counsel provided ineffective assistance by failing to investigate adequately his claims of trial and appellate counsels' ineffectiveness. We will begin our review by addressing, *ad seriatim*, Appellant's arguments that his underlying claims were potentially meritorious, and conclude by examining his claim of PCRA counsel's ineffectiveness.

As to all of his ineffective assistance of counsel ("IAC") claims, Appellant must demonstrate that "(1) his claims have arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) counsel's action or

inaction prejudiced [the] appellant." ***Commonwealth v. Hawkins***, 894 A.2d 716, 721 (Pa. 2006). Furthermore,

> [a] defendant raising a claim of ineffective assistance of counsel is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it could have reasonably had an adverse effect on the outcome of the proceedings.[3] This standard is different from the harmless error analysis that is typically applied when determining whether the trial court erred in taking or failing to take certain action. The harmless error standard, as set forth by this Court in ***Commonwealth v. Story***, 383 A.2d 155, 164 (Pa. 1978) (citations omitted), states that "[w]henever there is a 'reasonable possibility' that an error 'might have contributed to the conviction,' the error is not harmless." This standard, which places the burden on the Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard than the ***Pierce*** prejudice standard, which requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings. This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the stewardship of counsel. In a collateral attack, we first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel.

***Commonwealth v. Gribble***, 863 A.2d 455, 472 (Pa. 2004) (cleaned up).

### Trial Counsel IAC - Failure to Investigate a Witness

First, Appellant asserts that Attorney DiBenedetto-Forrest's No-Merit Letter was deficient for deeming meritless his claim that trial counsel was ineffective for failing to investigate a potential witness, "Krista." Appellant explains, he

> was accused of molesting one of his stepdaughters, causing the victim to imbibe alcoholic beverages and be committed because

---

[3] We refer to this standard herein as "outcome-determinative" prejudice.

- 5 -

she allegedly was acting suicidal. Trial counsel's strategy, based on the record, was to discredit the accuser, based on the fact that no forensic evidence was acquired or presented at trial to substantiate the charges. However, at the crisis center wh[ere] the accuser was taken, she was examined by one, Krista, who was an employee and had information surrounding the accuser as having tested her for possible sexual activity. Trial counsel failed to investigate this person or seek to inquire exactly the knowledge she possessed, via her examinations of the [accusers]. No medical, forensic or physical evidence was presented at trial as to this accuser's statements being valid. Also, this person was not listed by the prosecutor as a witness due to the lack of assisting his case against [Appellant], evidence-wise. Trial counsel never sought to inquire or investigate exactly that factual predicate the witness contained as to her actual examinations of the accused to determine whether the witness could assist him in his strategy of challenging the accuser[s'] credibility as to any sexual acts having been done to [them] by [Appellant]. It is totally impossible, absent investigation, to determine or even assert that Krista lacked any relevance to the case, or that she did not possess any testimony, evidence, facts, *etc.*, by which would have assisted trial counsel in his defense of challenging the credibility of the accuser[s].

Appellant's Brief at 7-8 (citation omitted).

In the No-Merit Letter, PCRA counsel determined this claim was meritless because:

The defense proceeded on the theory that the complainants invented the stories of sexual abuse against [Appellant] because he was a strict disciplinarian and they did not like living under his house rules. [Appellant] testified and unequivocally denied the allegations against him. Moreover, Commonwealth conceded that no physical or medical evidence existed to corroborate the allegations, [the absence of] which … defense counsel aptly utilized in the defense. Thus, it was unnecessary to call additional medical or psychological personnel to confirm the absence of such evidence.

No-Merit Letter, 11/27/19, at 10. The PCRA court agreed, stating that the

"record itself reveals no forensic evidence existed to corroborate the victims'

allegations and testimony; this fact renders [Appellant] incapable of demonstrating the uncalled witnesses would have helped him." Pa.R.Crim.P. 907 Notice, 3/3/20, at 3-4; *accord* PCO at 12-13.

We ascertain no basis in the record to conclude that Appellant was prejudiced by trial counsel's failure to investigate Krista. According to Appellant, Krista conducted the physical examination for evidence of the victims' sexual activity or trauma. The Commonwealth conceded at trial that no such evidence existed. Thus, any potential testimony from Krista to that effect would have been cumulative of the Commonwealth's concession, and any other potentially exculpatory testimony from Krista is pure conjecture. "[A]bsent a proffer of information that trial counsel could have uncovered and used [that would be beneficial for the defense]," a claim that a defendant "was prejudiced by a deficiency in [counsel's] investigation or preparation fails." *Commonwealth v. Elliott*, 80 A.3d 415, 439 (Pa. 2013). Accordingly, we conclude that the PCRA court did not err in accepting counsel's conclusion in the No-Merit Letter that this IAC claim is meritless.

### Trial Counsel IAC – Failure to File a Suppression Motion

Next, Appellant asserts that trial counsel was ineffective for failing to seek suppression of certain recorded statements.

> This Court has previously found that "[t]he failure to file a suppression motion under some circumstances may be evidence of ineffective assistance of counsel." *Commonwealth v. Metzger*, … 441 A.2d 1225, 1228 ([Pa. Super.] 1981); *see also Commonwealth v. Ransome*, 402 A.2d 1379, 1381 ([Pa.] 1979). "However, if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective for failing to

so move." ***Metzger***, 441 A.2d at 1228. "[T]he defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." ***Commonwealth v. Melson***, … 556 A.2d 836, 839 ([Pa. Super.] 1989).

***Commonwealth v. Watley***, 153 A.3d 1034, 1044 (Pa. Super. 2016).

Instantly, Appellant contends that, at trial, Detective

Kelly testified and admitted that false and fraudulent statements were accepted as true in the acquisition of a wiretap[,] which was used to unlawfully extract statements from [Appellant] on the wiretap. Trial counsel never, prior to trial, sought to see the statements suppressed based on the false predicate used by Kelly … to acquire the wiretap and evidence, which further indicates a clear failure to investigate the facts of [Appellant]'s case by trial counsel.

Appellant's Brief at 9.

As explained by the Commonwealth, Appellant's claim concerns

evidence

obtained from the victim['s] making a consensual tape[-]recorded telephone call to [Appellant] pursuant to the law enforcement exception of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §5704(2)(ii). [Appellant] bases this claim on an allegation that the detective involved admitted to "false and fraudulent statements" in his wiretap paperwork. Detective Kelly addressed this groundless assertion at trial in explaining that there was an error in his paperwork and that the error was a misprint. [N.T., 8/15/13, at 32-33]. This error did nothing to affect the validity and admissibility of the phone call evidence. Trial counsel cannot be found ineffective for failing to file a futile suppression motion.

Commonwealth's Brief at 16.

We agree with the PCRA court that Appellant is not entitled to relief.

***See*** PCO at 8-9. Appellant fails to provide any legal analysis in his brief as to

the potential basis for the suppression of the wiretap evidence. He does not explain how his reference to "false and fraudulent statements" affects the admissibility of the recordings,[4] nor does he explain, in any fashion, how his statements were "unlawfully extracted." Appellant's Brief at 9. Accordingly, Appellant has failed to meet his burden to convince us that the PCRA court erred in agreeing with PCRA counsel that this issue is meritless.

**Trial Counsel IAC – Failure to Object to Prosecutorial Misconduct**

Next, Appellant asserts that trial counsel was ineffective for failing to object when the prosecutor ostensibly made statements before the jury that "stripped him of the presumption of innocence by repeatedly referring to [Appellant's] attending questioning by police … with a lawyer, asserting and implying that innocent people do not need lawyers when being questioned by police." **Id.** at 9-10.

The record clearly demonstrates that this claim is meritless. During cross-examination of Appellant, when the line of inquiry turned to Appellant's questioning by police, the following exchange occurred:

Q. At that point did you know you were in trouble?

---

[4] Our review of the record demonstrates that, in Detective Kelly's application for the wiretap, a reference was made to a specific accusation by one of the victims. Detective Kelly indicated that a mistake had been made, as that particular accusation had been made by a different victim. **See** N.T., 8/15/13, at 32-33. Thus, the misprint was a mistake as to the source of the accusation. Appellant fails to substantiate in any way his claim that this misattribution was fraudulent, or how the facial falsity of that individual reference was an error grave enough to affect the admissibility of his statements on the recording.

A. No, I did not.

Q. Why bring a lawyer then?

N.T., 8/15/13, at 151.

Trial counsel immediately objected, *id.*, arguing that the prosecutor was not permitted to use Appellant's retention of counsel during cross-examination, *id.* at 152. However, the trial court overruled the objection. *Id.* Thus, there is no arguable merit to this IAC claim, because the record belies Appellant's contention that trial counsel failed to object to this line of questioning. Accordingly, we ascertain no error by the PCRA court in agreeing with PCRA counsel that this issue was meritless.[5]

**Trial Counsel IAC – Failure to Preserve an Objection to Jury**

**Instructions for Review on Direct Appeal**

Next, Appellant asserts that trial counsel was ineffective for failing to preserve an objection to a jury instruction. Appellant's Brief at 11-12. As this Court explained during Appellant's direct appeal from his second trial, Appellant sought

> to preclude the Commonwealth from introducing evidence of Appellant's actions and conduct toward the victims in this case for which he was not specifically charged in the second trial. This

---

[5] Appellant solely claims that *trial counsel* failed to object and, consequently, failed to preserve the claim for appellate review, a claim that is not supported by the record. The claim was preserved. Appellant does not assert in his brief that the PCRA court erred by accepting the No-Merit Letter on the basis that direct-appeal counsel was ineffective for failing to seek further review of the court's overruling that objection, nor did he preserve such a claim in his response to the PCRA court's Rule 907 notice. Thus, any such claim has been waived.

included "[f]acts that led to these convictions[, of endangering the welfare of children and corruption of minors in the first trial,] where on diverse dates between 2001 and 2009[,] [Appellant] made comments about the alleged victims' breasts and buttocks and engaged in conduct including pulling on the victims' bra straps and touching their buttocks." N.T., 8/12/13, at 4. The Commonwealth sought admission of the evidence at the second trial to show, *inter alia*, "the motive and intent of Appellant." ***Id.*** at 5.

***Commonwealth v. Clarke***, No. 148 EDA 2014, unpublished memorandum at 8 (Pa. Super. filed Dec. 2, 2014).

The trial court permitted the testimony, and Appellant's trial counsel presented a proposed standard instruction for the jury after testimony concluded. ***Id.*** at 9. However, the proffered instruction was a boilerplate form from the Pennsylvania Standard Criminal Jury Instructions, lacking any specific reference to the facts and circumstances of this case. Nevertheless, the trial court read the following instruction to the jury:

> You have heard evidence tending to prove that the Defendant was guilty of improper conduct in the household. He is not on trial for that now. I am speaking about the testimony to the effect that the Defendant would make remarks, the Defendant might pull on the bra strap of one of the people, or pull on towels, or any of the things of that nature that you may have heard in the course of this case. This evidence is before you for a limited purpose. That is for the purpose of tending to show that the Defendant committed the other crimes charged, the other sexual misbehavior. This evidence must not be considered by you in any way other than for that purpose that I just stated. You must not regard this evidence as showing that the Defendant is a person of bad character or criminal tendencies[, from] which you might be inclined to infer guilt. On the other hand[,] I did find that the evidence was relevant[,] and what you have to consider is my finding that it was relevant, the ultimate criteria for relevance in a criminal case or any case at law is that the evidence makes it more likely that the Defendant committed the crime than less likely. And you can consider it in that fashion.

*Id.* (quoting from N.T., 8/16/13, at 120–22) (emphasis omitted).

On appeal, Appellant argued that the charge "invited the jury to consider Appellant's bad character…." *Id.* at 10. This Court initially held that the issue was waived, because although trial counsel had restated his objection to the *admissibility* of the evidence after the instruction was given, he "did not articulate a specific exception to the trial court's wording of the charge or express the view that the charge inadequately reflected the trial court's ruling." *Id.* Nevertheless, this Court went on to state that, "alternatively[,]" Appellant's "contentions are without merit[,]" reasoning that

> Appellant's assertion that the trial court's charge invited the jury to consider Appellant's bad character is belied by the trial court's specific instruction to the contrary. "You must not regard this evidence as showing that the Defendant is a person of bad character or criminal tendencies which you might be inclined to infer guilt." N.T., 8/16/13, at 121.

*Id.*

Appellant now contends that trial counsel was ineffective for failing to preserve an objection to the jury instruction. He argues that it is patently obvious that trial counsel was ineffective, because this Court determined that trial counsel waived his challenge to the jury instruction for appellate review. Appellant's Brief at 11.

However, Appellant simply ignores this Court's alternative analysis during his direct appeal. After finding waiver, this Court also determined that the issue was meritless, because the instructions given by the trial court plainly belied the argument that the jury had been invited to consider

Appellant's bad character. We ascertain no reason (and Appellant fails to suggest one) as to why this Court would reach a different conclusion on the merits of the underlying claim through collateral review, and in so doing contradict the alternative analysis that this Court already provided during Appellant's direct appeal. The record clearly demonstrates that trial counsel's failure to preserve a challenge to the at-issue jury instruction did not result in outcome-determinative prejudice as is required under **Pierce**, **supra**. The jury was instructed to consider the prior bad-acts evidence only for a limited purpose, and it was specifically told not to infer guilt from the evidence's propensity to establish bad character. N.T., 8/16/13, at 121. Thus, we ascertain no error in the PCRA court's agreeing with PCRA counsel that this issue is meritless.

### Illegal Sentence - *Alleyne*

Next, Appellant claims that he received an illegal sentence under **Alleyne v. United States**, 570 U.S. 99 (2013).[6] In **Alleyne**, the Supreme Court held that facts that increase a mandatory minimum sentence are an element of the offense, which must be submitted to the fact-finder and found beyond a reasonable doubt. Appellant argues that his term of 17-34 years' incarceration violates **Alleyne**, but his argument in this regard is

---

[6] Appellant formulates this as an IAC claim in his brief, as he did in the PCRA court. However, it is axiomatic that an illegal sentence "is always subject to review" within a timely PCRA petition. **Commonwealth v. Fahy**, 737 A.2d 214, 223 (Pa. 1999). Thus, *if meritorious*, Appellant would be entitled to relief for an illegal sentence regardless of whether any previous counsel failed to raise the issue.

incomprehensible and, nevertheless, wholly unconvincing. **See** Appellant's Brief at 12-13.

The PCRA court addressed this claim as follows:

In the present case[,] Appellant's sentences fell within the standard range of the sentencing guidelines and do not exceed any of the statutory maximums...[. A]t the sentencing hearing[,] the Honorable Michael F.X. Coll stated specifically [that] Appellant's sentence was not a mandatory[-]minimum sentence. **See** [N.T., 11/26/13, at 10]. Notwithstanding Appellant's assertions to the contrary, the sentencing court did not impose any mandatory minimum sentences[,] … the sentence does not exceed the statutory maximums[,] and consequently there is no **Alleyne** violation.

PCO at 16.

We ascertain no error in the PCRA court's agreement with PCRA counsel that this issue is meritless, as our own review of the record fails to uncover any evidence that would suggest Appellant's sentence violates **Alleyne** in whole or in part. All the facts necessary to support the imposition of Appellant's sentence were presented to the jury under a beyond-a-reasonable-doubt standard.

### Illegal Sentence - *Muniz*

Appellant also claims his lifetime registration requirements ("LR requirements") under Pennsylvania's Sex Offender Registration and Notification Act are illegal under **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017).[7] He contends this is because his LR requirements under SORNA

---

[7] As with Appellant's previous issue, he couched this claim in terms of counsel's ineffectiveness; however, we need only address the merit of the underlying illegal sentencing claim. **See** n.6, **supra**.

constitute "a punishment" that "offends the State and Federal Constitutions' cruel and unusual punishment portions." Appellant's Brief at 14. Thus, he argues the PCRA court erred when it agreed with PCRA counsel that he was not entitled to relief on this claim. Appellant's claim is meritless.

Pennsylvania's General Assembly passed SORNA in 2012 ("SORNA I"), and the provisions of SORNA I became effective on December 20, 2012. Appellant's LR requirements were therefore imposed under SORNA I, as he was sentenced in 2013. Subsequently, in *Muniz*, our Supreme Court held the registration and reporting requirements of SORNA I constitute criminal punishment, and their retroactive application violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions. *Muniz*, 164 A.3d at 1223. In response to *Muniz*, the General Assembly amended SORNA I to include Acts 10 and 29 of 2018 ("SORNA II"). *See* 2018, Feb. 21, P.L. 27, No. 10 (Act 10); *see also* 2018, June 12, P.L. 140, No. 29, (Act 29). Subsequently, in *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020), our Supreme Court determined that Subchapter I of SORNA II, which applies to Appellant,[8] is not punitive and, therefore, its retroactive application does not violate the constitutional prohibition against *ex post facto* laws. Accordingly, Appellant's reliance on *Muniz* is misplaced, as the constitution-

---

[8] *See* 42 Pa.C.S. § 9799.52(1) (providing that Subchapter I is applicable to an offender who committed an offense prior to December 20, 2012, and whose registration period has not expired).

offending provisions of SORNA I no longer apply to him. Appellant is now subject to the provisions of Subchapter I of SORNA II.

Here, Appellant offers a different argument than that presented in *Lacombe*, contending that his LR requirements constitute a violation of his Eighth Amendment rights, and their corresponding Pennsylvania Constitution counterparts. However, the *Lacombe* Court's conclusion that Subchapter I's registration and reporting requirements are non-punitive simultaneously resolved Appellant's claim, because the Eighth Amendment does not apply to non-punitive statutes. *See In re J.C.*, 232 A.3d 886, 894 (Pa. Super. 2020) (holding that when a statute is not punitive, application of the statute does not violate constitutional protections against double jeopardy, cruel and unusual punishment, or *ex post facto* application of a penal law). Moreover, the "Pennsylvania prohibition against cruel and unusual punishment is coextensive with the Eighth and Fourteenth Amendment of the United States Constitution." *Commonwealth v. Yasipour*, 957 A.2d 734, 743 (Pa. Super. 2008). Accordingly, we ascertain no error in the PCRA court's agreement with PCRA counsel that this issue is meritless.

### Trial Counsel IAC – Failure to Call Witnesses

Next, Appellant claims that there were two witnesses "who lived at his house during the alleged sexual assaults and who would have elicited testimony indicating the fact that the accuser was lying and seeking to have [Appellant] removed from the home because of his strict discipline of her." Appellant's Brief at 15. In his brief, Appellant provides the witnesses' names,

(Veronica Zinni and Shuane Slaton), as well as their addresses and phone numbers. *Id.*

The Commonwealth argues that the "two witnesses referenced in [Appellant]'s brief are not identified or even mentioned in [his response] to PCRA [c]ounsel's [No-Merit] Letter. This is consistent with PCRA counsel's statement in the ***Turner***/***Finley*** letter that '[Appellant] does not affirmatively articulate which witnesses would have been available for presentation of beneficial evidence.' [No-Merit] Letter, [11/27/19, at] 10." Commonwealth's Brief at 20. Thus, the Commonwealth contends this claim is waived for our review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

We are constrained to agree with the Commonwealth. Appellant did not mention either witness in his response to the No-Merit Letter, nor do those names appear in his *pro se* PCRA petition. Indeed, Appellant makes no attempt in his brief to demonstrate where in the record it can be shown that he informed any of his prior attorneys of these potential witnesses. Accordingly, we conclude this claim is waived for our review and, in any event, we cannot ascertain any error in the PCRA court's acceptance of the No-Merit Letter on this basis.

\*\*\*

In sum, we discern no basis to conclude that the PCRA court erred in accepting PCRA counsel's No-Merit Letter. To the extent that our reasoning with respect to individual issues differed from the rationale of the PCRA court,

and/or with the analysis set forth in PCRA counsel's No-Merit Letter, we note that "[t]his Court may affirm a PCRA court's decision on any grounds if the record supports it." **Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012).

### PCRA Counsel IAC

Finally, interlaced throughout his brief, Appellant contends that his PCRA counsel, Attorney DiBenedetto-Forrest, was ineffective for failing to properly investigate his case and research his claims, which culminated in counsel's filing of the No-Merit letter. This claim was preserved, generally, in Appellant's response to counsel's No-Merit Letter.[9] However, after determining that there is no merit to each of Appellant's trial and appellate counsel IAC claims, and that his illegal sentencing claims also do not warrant relief, we conclude that Appellant has not met his burden to demonstrate that any deficiencies in PCRA counsel's performance resulted in outcome-determinative prejudice. That is, Appellant has not adequately demonstrated that the results of the PCRA proceedings below would have been different but for the inadequacies of PCRA counsel's representation.[10] Accordingly, his claim that PCRA counsel was

---

[9] However, as noted above, Appellant waived his claim that trial counsel failed to investigate Veronica Zinni and Shuane Slaton as potential witnesses. Likewise, Appellant waived his claim that PCRA counsel was ineffective for failing to investigate these witnesses for the same reason.

[10] We are deeply troubled that Attorney DiBenedetto-Forrest took more than three years to file the No-Merit Letter after the court appointed him as PCRA counsel. Although the record contains some explanations for part of that

- 18 -

ineffective also lacks merit.  ***See Commonwealth v. Fears***, 86 A.3d 795,

804 (Pa. 2014) ("Failure to prove any prong … will defeat an ineffectiveness

claim.").

Order ***affirmed***.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/1/21

---

delay, the full extent of the delay remains inexcusable.  Nevertheless, Appellant has not demonstrated how the outcome of the PC proceedings would have been different absent that delay and, therefore, he is not entitled to relief on that basis alone.