J-A17010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD COLLINS | : | No. 2404 EDA 2023 |
| | : | |
| Appellee | : | |

Appeal from the Order Entered August 31, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  MC-51-CR-0001925-2023

BEFORE:  BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 18, 2024**

The Commonwealth appeals from the order denying its motion to refile a criminal complaint against Richard Collins ("Appellee").  As we find that the Commonwealth presented a *prima facie* case for all the charged offenses, we reverse and remand for further proceedings.

We glean the following underlying facts from the testimony, surveillance video recording, and video statement of Appellee offered at his May 1, 2023 preliminary hearing.  The incident in question took place in Philadelphia on the evening of January 31, 2023.  In particular, a vehicle-pedestrian collision occurred on the stretch of West Hunting Park Avenue between North 17th Street and Chelsea Street.  At that point, Hunting Park Avenue included two lanes of traffic in each direction, plus a lined median that becomes a left turn

lane in front of Simon Gratz High School. Across the street from the school was the driveway to a store, with a Boys and Girls Club on the corner. While precipitation earlier in the day left some moisture on the roadway, no weather conditions impeded visibility or traction that evening.

Shortly after 6:40 p.m., which was well after sunset given the time of year, Roberto Otero was driving along this portion of roadway in the left eastbound lane. He saw a man later identified as Jamar Jenkins ("Victim") in the street in the middle of the block where there is no crosswalk, heading from the south side of the street north towards the grocery. Mr. Otero slowed to allow Victim to pass in front of his car, at which point Victim "start[ed] running really fast, like trying to make it to the other side of the street." N.T. Preliminary Hearing, 5/1/23, at 7. Then a red Tesla sedan, which Mr. Otero had not seen earlier, came "out of nowhere" in the right westbound lane, travelling "pretty fucking fast," and struck Victim, throwing him into the air. *Id*. at 7, 18. Victim landed back on top of the Tesla.

The Tesla did not stop. Instead, it continued along West Hunting Park Avenue at least as fast as other cars on the street. Victim remained atop the Tesla for no less than seven car lengths,[1] apparently catching his head in the

_____

[1] The portion of West Hunting Park Lane visible in the surveillance footage is only the western half of the block. Appellee indicated that he encountered Victim closer to the crosswalk at North 17th Street. In that circumstance, Appellee continued driving while in contact with Victim for substantially longer than eight car lengths.

- 2 -

vehicle's shattered windshield. Victim eventually became extracted from the car and landed on the sidewalk, where his momentum carried him another car length before his body came to rest.

Still, the Tesla still did not stop. Instead, despite the obvious collision and the significant damage to the vehicle, it slowed only somewhat to make a right turn onto Chelsea Street and then sped out of view. The Tesla ultimately pulled over on Chelsea Street after several hundred feet.[2] *Id*. at 26.

Mr. Otero got out of his car and went to see if he could help Victim, "but there was nothing [he] could do for him." *Id*. at 7. While Victim's body did not exhibit signs of injury, his head was "like pu[tt]y." *Id*. at 7-8. People

_____

[2] The Commonwealth offered a photo of the Tesla as it was parked post-collision:



standing outside the Boys and Girls Club waved Mr. Otero over and pointed up Chelsea Street, where he saw the Tesla had parked. He ran towards it and saw a man in a plaid shirt exit from the passenger side and Appellee standing by the open driver's door trying to yank a white hoodie off the car. *Id*. at 8-11, 17. Mr. Otero told Appellee not to go anywhere, and Appellee said "nobody's gonna go anywhere." *Id*. at 8. Mr. Otero started walking back toward the corner and saw Appellee run away when a police car pulled up. *Id*. at 12.

Appellee *sua sponte* appeared at the 39th Police District later that evening. At 8:25 p.m. he gave a video statement about the incident, indicating that he was the driver of the Tesla, which he had rented that day, and he had a male and female passenger whose full names he could not provide. Appellee reported that the collision occurred only a couple of yards past the intersection of North 17th Street and West Hunting Park Avenue. He insisted that he had not been going fast, only traveling at thirty-five to forty miles per hour, and that the impact he made with Victim was by the window and was not hard.[3] He asserted that he slammed on his brakes, which caused Victim to fall off the vehicle.

_____

[3] Appellant represented that the damage to the bumper had been caused an hour earlier in a different part of the city when a motorist who had insurance information but no driver's license hit the Tesla.

- 4 -

Appellant claimed that the first thing he did after the crash was to stop and check on Victim, but because there were a lot of people in Philadelphia being accused of killing people when it was a blameless accident, he "freaked out" and wanted to hurry up and tell his mother, who was five minutes away. *See* Video Statement, 1/31/23. Appellant used his "pinkish" tie-dye hoodie to wipe his clothes off, because part of Victim had ended up in the car and "creeped [him] out so bad." *Id*. In a panic he threw the hoodie as he fled. He stated that he went back to the scene of the collision, but there were cameras there and he did not want to be on the news and damage his reputation. Therefore, he went to the police station.

Police recovered Appellee's white and pink tie-dye hoodie from under another vehicle parked on Chelsea Street. *See* N.T. Preliminary Hearing, 5/1/23, at 33. A significant portion of Victim's brain, immediately identifiable as such, was found inside the car near the gas and brake pedals. The medical examiner determined that Victim, forty-one-year-old Jamar Jenkins, died of blunt force injuries with fractures of the tibia, fibula, and skull and an extruded brain.

The Commonwealth filed a criminal complaint charging Appellee with accidents involving death or personal injury, homicide by vehicle, involuntary manslaughter, recklessly endangering another person ("REAP"), reckless driving, and driving at an unsafe speed. At the preliminary hearing, the

Commonwealth offered the evidence detailed above.[4]  The magisterial district judge discharged Appellant for lack of evidence, opining that it "was a horrible accident" and that everybody drives ten miles over the speed limit.  *Id*. at 42-43.

The Commonwealth promptly issued notice of the refiling of the criminal complaint.  A hearing before the trial court was held at which the Commonwealth offered all the evidence from the May 1, 2023 preliminary hearing, plus photographs of Appellee's discarded hoodie.  At the conclusion of the hearing, the trial court denied in its entirety the Commonwealth's motion to refile the charges.  *See* N.T. Hearing, 8/31/23, at 14.

The Commonwealth timely appealed to this Court.  The trial court directed the Commonwealth to file a Pa.R.A.P. 1925(b) statement, and it timely complied.  Thereafter, the court authored a Rule 1925(a) opinion explaining that, by and large its decision was premised upon insufficient evidence that Appellee acted recklessly.

The Commonwealth states the following question for our review:

> Did the [trial] court err . . . as a matter of law in concluding that the Commonwealth did not establish a *prima facie* case of homicide by vehicle, involuntary manslaughter, accidents

---

[4] The video was proffered during the testimony of Officer Matthew Domenic, who testified that he was unable to locate a posted speed limit in the vicinity of the collision.  *See* N.T. Preliminary Hearing, 5/1/23, at 30.  Officer Domenic did not opine as to Appellee's exact speed.  He acknowledged that the video did not depict Appellee traveling as fast as sixty or seventy miles per hour. *Id*. at 31.  However, as we discuss *infra*, the video did not capture Appellee's vehicle or its speed before the collision, only afterwards.

involving death or personal injury, recklessly endangering another person, driving at a safe speed, reckless driving, and tampering with evidence where the evidence showed that [Appellee] struck the pedestrian victim while driving recklessly, fled the scene, and hid his bloodied clothing?

Commonwealth's brief at 3.[5]

Our Supreme Court summarized the principles governing our review thusly:

The preliminary hearing is not a trial. The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention. At this hearing the Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it.

A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense. Furthermore, the evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury. A judge at a preliminary hearing is not required, nor is he authorized to determine the guilt or innocence of an accused; his sole function is to determine whether probable cause exists to require an accused to stand trial on the charges contained in the complaint. An offense on which the Commonwealth has met its burden will be "held over" for trial; at the trial, of course, the Commonwealth's burden is to establish guilt beyond a reasonable doubt. The weight and credibility of the evidence are not factors at the preliminary hearing stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense.

Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the

_____

[5] Appellee has not participated in this appeal by filing a brief or appearing at oral argument.

Commonwealth's case. The use of inferences is a process of reasoning by which a fact or proposition sought to be established is deduced as the logical consequence from the existence of other facts that have been established. The "more-likely-than-not" test must be applied to assess the reasonableness of inferences relied upon in establishing a *prima facie* case of criminal culpability. The more-likely-than-not test is the minimum standard—anything less rises no higher than suspicion or conjecture.

*Commonwealth v. Perez*, 249 A.3d 1092, 1102–03 (Pa. 2021) (cleaned up).

We first consider the batch of offenses that include a *mens rea* of recklessness as an element. Homicide by vehicle is defined as follows:

Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S. § 3732(a). Meanwhile, "[a] person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person."[6] 18 Pa.C.S. § 2504(a). The REAP statute states: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily

_____

[6] This Court has held that recklessness and gross negligence are equivalent for purposes of the statutes defining involuntary manslaughter and homicide by vehicle. *See Commonwealth v. Sanders*, 2021 259 A.3d 524, 531-32 (Pa.Super. 2021) (*en banc*).

- 8 -

injury." 18 Pa.C.S. § 2705. Finally, the Vehicle Code provides that "[a]ny person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." 75 Pa.C.S. § 3736.

Our General Assembly has defined recklessness as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3).

The trial court opined that the Commonwealth's evidence failed to establish reckless conduct by Appellee, offering the following explanation:

In the instant case, Appellee was driving 35-40 miles per hour on a street where the speed limit was not posted. According to testimony from one witness, "a figure came out from in the middle of the street," and the witness saw the figure just in time to stop his car. The figure then "started running really fast, like trying to make it to the other side of the street." Testimony from a second witness confirmed that [Victim] did not cross at the intersection, but instead was "coming from the middle of the block." That same witness's testimony confirmed that [Victim] was running across the street as though he was "trying to get through traffic."

According to Appellee's video interview with police, Appellee was crossing an intersection where he had the green light. [Victim] came from Appellee's driver's side as he was driving in the right lane towards 17th Street. [Victim] was wearing dark clothing. Appellee had not been under the influence of prescription medicine, street drugs or alcohol, and he had a valid driver's license.

The video footage of the accident that was presented to this court did not show the Appell[ee] driving the Tesla at an unsafe speed. During his video interview with police, Appellee stated that he was driving 35-40 miles per hour. The Commonwealth's own witness testified that she herself was driving 30-40 miles per hour because she was driving with poor brakes. Further, on cross-examination, Officer Domenic agreed with Appellee's counsel that it did not appear that Appellee was driving 60-70 miles per hour. Officer Domenic agreed with this court that it was not uncommon for people to drive ten miles above the speed limit in the area of the accident. Finally, Officer Domenic also agreed with this court that, based on the video footage, Appellee was not outrageously driving 60 or 70 miles per hour.

Appellee was not excessively speeding, nor did he run a red light. He was not under the influence of drugs or alcohol. He possessed a valid driver's license. [Victim] quickly ran into the street to try to cross to the other side, which caused another driver to abruptly stop to avoid hitting him. Further, [Victim] crossed in the middle of the street, instead of at the intersection. Finally, Appellee did not see [Victim] until he was a few inches in front of the Appellee's car, which did not give him enough time to avoid hitting [Victim]. Thus, the Commonwealth failed to present evidence of reckless or grossly negligence conduct by Appellee.

Trial Court Opinion, 11/14/23, at 11-12 (cleaned up; unnecessary articles omitted). It was on this basis alone that the court rejected the charges of homicide by vehicle, involuntary manslaughter, REAP, and reckless driving.

We perceive that the trial court has made an excellent argument for Appellee to present at trial, highlighting evidence favorable to him and making inferences to his benefit. Such arguments ultimately might cause a jury to conclude that the Commonwealth failed to eliminate reasonable doubt of Appellee's guilt.

However, at this stage, we must view the evidence in the light most favorable to the Commonwealth and make all inferences in its favor to

- 10 -

ascertain whether it is more likely than not that Appellee perpetrated the charged offenses. Applying the proper standard, we conclude that the Commonwealth's evidence was sufficient to warrant holding over the recklessness-based offenses for trial.

The key fact that the trial court failed to appreciate in viewing the video of the incident is that the Tesla's initial impact with Victim occurred either off-screen or at just as the Tesla appeared. Appellee in his statement indicated that he made initial contact with Victim a few feet west of the crosswalk at the intersection of West Hunting Park Avenue and North 17th Street, an area not captured by the video camera. He further professed to have slammed on the brakes when the collision happened.

The trial court correctly noted that the police officer conceded that Appellee appeared to be going less than sixty or seventy miles per hour in the video, and Kara Gonzalez, who had been driving the same direction as Mr. Otero and estimated that she had been traveling between thirty and forty miles per hour, testified that Appellee had been moving faster than she was. *See* N.T. Preliminary Hearing, 5/1/23, at 37. Critically, that was the speed at which Appellee was traveling **after** he hit Victim.

In other words, the evidence supports the finding that Appellee had been driving significantly faster than seen on camera before he struck Victim, so fast that the Tesla was not perceptible to Victim or Mr. Otero before it appeared to come "out of nowhere" and cause the fatal collision. Thereafter,

- 11 -

Appellant proceeded to continue driving, now at a speed of between forty and sixty miles per hour, with a shattered windshield and Victim atop the vehicle. After Victim was thrown from the Tesla, leaving a large portion of his brain in Appellee's lap, Appellee slowed only to turn and then sped away.

We have no hesitation in concluding that this evidence was sufficient to satisfy the Commonwealth's preliminary hearing burden of showing that Appellee drove his vehicle in a manner that was a gross deviation from the standard of conduct of a reasonable person, and exhibited a willful disregard, both before and after initially hitting Victim, of a substantial risk of injury to people in the vicinity. Further, the proof sufficiently warranted a finding that Victim's death resulted from Appellee's recklessness.

We also conclude that this evidence likewise adequately established Appellee's violation of the Vehicle Code provision requiring vehicles to maintain safe driving speeds. That statute states:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

75 Pa.C.S. § 3361. On the dark evening in question, in a busy urban setting, next to a school and a Boys and Girls Club, where some areas of the roadway

- 12 -

were not fully lit, other vehicles on the road saw Victim in time to avoid hitting him. Appellant was driving at a speed so great that he was still the fastest car on the road even after colliding with Victim, and he then sped away with Victim on his car and a shattered and blood-covered front windshield. Plainly it is more likely than not that he drove at a speed that was greater than was prudent under the conditions.

For these reasons, we are compelled to reverse the trial court's order insofar as it rejected the counts of homicide by vehicle, involuntary manslaughter, REAP, reckless driving, and driving vehicle at safe speed. *Accord Commonwealth v. Johnson*, 846 A.2d 161, 165–66 (Pa.Super. 2004) (concluding that evidence supported finding that defendant drove at an unsafe speed and killed the victim, where, although defendant's exact speed was uncertain, other motorists saw the victim along the roadway and avoided hitting her, while the defendant slammed on his brakes and still hit the victim with enough force to scatter her bodily fluids and tissue twenty-seven feet).

We next consider the trial court's refusal to allow the Commonwealth to refile the charge concerning accidents involving death or personal injury, as a second-degree felony. In finding the Commonwealth's evidence lacking, the trial court examined § 3742.1 of the Vehicle Code, which makes it a felony of the third degree to cause an accident resulting in death while the driver's operating privileges were revoked or suspended. *See* 75 Pa.C.S. § 3742.1(a)(1), (b)(2). The court then determined that the charges were not

- 13 -

warranted because the Commonwealth did not proffer evidence that Appellee

lacked a valid license.  **See** Trial Court Opinion, 11/14/23, at 13.

However, the Commonwealth charged Appellee with violating § 3742 of

the Vehicle Code not § 3742.1.  Section § 3742 of the Vehicle Code states as

follows, in pertinent part:

> **(a) General rule.--**The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid).[7]  Every stop shall be made without obstructing traffic more than is necessary.
>
> . . . .
>
> **(b) Penalties.--**
>
> . . . .
>
> (3)(i) If the victim dies, any person violating subsection (a) commits a felony of the second degree, and the sentencing court shall order the person to serve a minimum term of imprisonment of not less than three years and a mandatory minimum fine of $2,500, notwithstanding any other provision of law.

75 Pa.C.S. § 3742.

---

[7] That section mandates, *inter alia*, that the driver of a vehicle involved in an accident causing injury or death to a person give his name, address, and registration number of the vehicle to any injured person or police officer at the scene, and render reasonable assistance, including making arrangements to get the person to a doctor or hospital.  **See** 75 Pa.C.S. § 3744(a).

Examining the statute referenced in the criminal complaint, we discern that the prosecution offered evidence that Appellee was involved in an accident that caused Victim's death, he did not immediately stop the vehicle to check on Victim's condition, and he did not remain at the scene until arrangements were made to have Victim transported to an appropriate medical facility. The Commonwealth thus made out a *prima facie* case of accidents involving death, and the trial court erred in refusing to permit the charge to be refiled and held over for court.

Finally, the Commonwealth maintains that the trial court erred in rebuffing its evidence of the charge of tampering with evidence. The statute codifying that offense provides as follows:

> A person commits a misdemeanor of the second degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:
>
> (1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation; or
>
> (2) makes, presents or uses any record, document or thing knowing it to be false and with intent to mislead a public servant who is or may be engaged in such proceeding or investigation.

18 Pa.C.S. § 4910. This Court has explained that tampering with evidence includes three elements: "(1) the defendant knew that an official proceeding or investigation was pending or about to be instituted; (2) the defendant altered, destroyed, concealed, or removed an item; and (3) the defendant did so with the intent to impair the verity or availability of the item to the

proceeding or investigation." ***Commonwealth v. Yasipour***, 957 A.2d 734, 745 (Pa.Super. 2008) (cleaned up).

The trial court found the Commonwealth's evidence of the second and third elements to be lacking:

> While Appellee arguably knew that an investigation into the accident would likely be instituted, the Commonwealth did not establish that Appellee, and not either of his companions, concealed the sweatshirt. Further, the Commonwealth did not establish whether the sweatshirt belonged to Appellee, or the decedent, or a third party unrelated to the accident. The Commonwealth also did not establish how long the sweatshirt had been under the rear of the car.
>
> In his video interview with police, Appellee stated that he removed his own hoodie and threw it away. But he did not recall where he discarded his hoodie. He also did not state whether he removed the decedent's hoodie from the front of the Tesla, or whether he discarded it. Further, the Commonwealth did not establish the condition of the sweatshirt found under the rear of the car, specifically, whether it was bloodied or torn.
>
> Finally, Mr. Otero testified that he saw Appellee trying to remove the decedent's hoodie from the Tesla. Even accepting this testimony as true, the Commonwealth did not establish that Appellee removed the decedent's hoodie with the intent to impair the verity or availability of the evidence to the proceeding or investigation.

Trial Court Opinion, 11/14/23, at 16 (cleaned up; unnecessary articles omitted).

Again, the trial court failed to evaluate the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences. As our recitation of the evidence at the outset detailed, the police recovered a white hoodie with pink and blue tie-dye from underneath another

vehicle on Chelsea Street near where Appellee abandoned the rented Tesla. While the video and witness testimony indicated Victim had been in dark clothing, Appellee acknowledged that he had been wearing a pinkish tie-dyed hoodie which he used to clean off Victim's viscera. He further admitted that he had disposed of the hoodie as he ran to his mother, and that the reason he fled was because he was afraid of being blamed for killing Victim.

As the Commonwealth posits, "[b]y fleeing and disposing of the clothing he wore during the accident, it is a reasonable inference that he intended to impair authorities from identifying him as the driver based on his admitted fear." Commonwealth's brief at 30. Moreover, "[r]egardless of the fact that he ultimately returned to give a statement, that does not negate [his] *mens rea* at the time he disposed of his clothing." *Id*. at 30-31. We agree and conclude that the Commonwealth proffered a *prima facie* case of tampering with evidence such that the complaint should have been accepted and held for court. *Accord Commonwealth v. Toomer*, 159 A.3d 956, 962 (Pa.Super. 2017) (holding reasonable inferences under the totality of the circumstances supported finding that the defendant disposed of a firearm to conceal his involvement in a shooting because he knew an investigation would ensue when the victim received medical attention for the gunshot wound).

In conclusion, a jury very well may ultimately find at trial that this was an unfortunate accident that, given Victim's dart into traffic at night in dark clothing, would have occurred even if Appellee had been driving with the

utmost caution and stopped as soon as impact was made. However, applying the proper standard of review, which mandates giving the Commonwealth the benefit of all reasonable inferences, there was sufficient evidence to suggest that Appellee drove recklessly and faster than conditions warranted, which caused Victim's death. The evidence also sufficiently suggested that Appellee knowingly failed to stop and remain at the scene of the collision until he complied with his duties to give information and render aid, and instead attempted to conceal evidence of his involvement as he fled. We therefore reverse the trial court's August 31, 2023 order and remand for all charges to proceed to court.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/18/2024