J-S42023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CALVIN ALEXANDER EPPS | : | |
| | : | |
| Appellant | : | No. 289 MDA 2024 |

Appeal from the Judgment of Sentence Entered December 5, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002398-2021

BEFORE: LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                    **FILED: FEBRUARY 24, 2025**

Calvin Alexander Epps ("Epps") appeals from the judgment of sentence imposed by the Dauphin County Court of Common Pleas ("trial court") following his convictions of fleeing or attempting to elude an officer and tampering with or fabricating physical evidence.[1] Epps maintains that the Commonwealth's evidence was insufficient to prove the elements of these crimes. He also asserts that his sentence is illegal because it did not credit him for time he spent incarcerated prior to trial. Upon review, we hold that the Commonwealth sufficiently established that Epps committed the crime of

---

[1] 75 Pa.C.S. § 3733(a); 18 Pa.C.S. § 4910(1). Epps was also convicted of possession with intent to deliver, driving under the influence (controlled substance-metabolite) ("DUI"), possession of a controlled substance by a person not registered, possession of drug paraphernalia, and various summary motor vehicle violations, none of which is are at issue in this appeal.

fleeing or eluding an officer, but pursuant to **Commonwealth v. Delgado**, 679 A.2d 223 (Pa. 1996), there was insufficient evidence to convict Epps of tampering with or fabricating physical evidence as a matter of law. Furthermore, because the trial court imposed an illegal sentence that failed to credit Epps for certain time served prior to trial, we vacate Epps' judgment of sentence and remand for the trial court to impose a new sentence that comports with the time credit mandates of 42 Pa.C.S. § 9760(1). Therefore, we affirm in part, reverse in part, vacate Epps' sentence, and remand for further proceedings consistent with this decision.

## Factual and Procedural Histories

The Commonwealth established the following facts at Epps' jury trial. Trooper Scott Markley is a Pennsylvania State Trooper trained in interdicting illegal drugs on the interstate highways. N.T., 12/12/2023, at 44. He regularly patrols Interstate 81 ("I-81") in Dauphin County, which is a highway that connects New York to Tennessee. *Id.* at 45-47. Around 7:50 a.m. on April 17, 2021, Trooper Markley was observing the southbound traffic on I-81 from his marked patrol vehicle, which was stationed in a median between the northbound and southbound lanes around mile marker 81. *Id.* at 46-47. Trooper Markley observed a black GMC SUV traveling southbound in the lefthand lane. *Id.* at 45, 154. The SUV's windows were heavily tinted— including the front windshield—and it had temporary white paper license plates. *Id.* at 47-48. An Audi sedan with tinted windows and temporary

- 2 -

plates immediately trailed the SUV. *Id.* The duo traveling in a pair caught Trooper Markley's attention because criminals often use tinted windows and temporary plates to evade detection of their criminal activities on the highways. *Id.*

Trooper Markley pulled his vehicle out onto the highway behind the SUV and sedan and attempted to catch up to the vehicles to run their license plate numbers. *Id.* at 48-49. Instead of catching up to them in about a half mile as Trooper Markley expected, he "could just barely see" the sedan and it seemed like the SUV had "vanished." *Id.* at 49, 57. After scanning the highway, Trooper Markley saw the SUV "way up ahead." *Id.* The SUV, which the trooper previously observed to be driving around the speed limit, was now "flying at a high rate of speed" and carelessly passing other cars by "weaving" in and out of lanes. *Id.* at 49-50, 154. Trooper Markley activated his vehicle's lights and siren, notified the police dispatcher that he was pursuing the SUV, and sped up. *Id.* at 50. He reported to the dispatcher that he estimated the SUV's speed at 100 miles per hour at this point. *Id.* at 135, 154. As he got closer, the SUV passed a tractor trailer by driving over the rumble strips on the right shoulder. *Id.* at 50. Once the SUV returned to the highway, it sped around a slight bend. *Id.* at 51-52. Trooper Markley was driving 120 miles per hour at this point but still had not caught up to the SUV. *Id.* at 51-52, 154. From approximately 200 to 300 yards behind, Trooper Markley "saw a light-colored object fly out" of the SUV's window, skip along the concrete

shoulder, and stop in the grass on the side of the highway. *Id.* at 50-51, 136. Suddenly, about one half to three quarters of a mile after the bag was thrown out of the window, the SUV slowed down and pulled over to the left shoulder. *Id.* at 52. The sedan followed suit. *Id.* at 61.

Trooper Markley learned through training and experience that during a police pursuit, suspects commonly distance themselves from contraband by discarding it along a bend in the road where the view of police is obscured and then surrendering. *Id.* at 53. Trooper Markley believed that the item thrown from the SUV's window looked like a kilo of drugs, which are often transported on Interstate 81 and packaged in a rectangular shape. *Id.* at 58-59.

Trooper Markley initiated a felony traffic stop and called for backup. *Id.* at 59. Trooper Markley approached the SUV with his weapon drawn by his hip. *Id.* at 61-62. Epps, who had been driving the SUV, exited the car, and Trooper Markley detained him on the ground with handcuffs. *Id.* Trooper Markley asked Epps where he was coming from and where he was going. *Id.* at 71. Epps responded that he had arrived in Watertown, New York, near the Canadian border around midnight and was returning to Maryland. *Id.* at 71-72. According to Trooper Markley, a short turnaround trip during the hours when fewer police patrol the highways was another indicator of potential drug trafficking. *Id.* at 71.

During a pat-down of Epps, Trooper Markley recovered $1,370 in cash. *Id.* The amount and denominations of the bills suggested that Epps was

involved in drug trafficking on a larger scale than simply street-level drug dealing. *Id.* Epps consented to a search of the SUV. *Id.* at 147. Police recovered plastic Ziplock bags of leaf marijuana from the center console and driver's door of the SUV and Epps admitted that it was his marijuana.[2] *Id.* at 73-75, 157.

After backup arrived, Trooper Markley drove another officer's vehicle back to where the package thrown from the SUV had landed. *Id.* at 64. He retrieved a rectangular package from the grass alongside the highway. *Id.* at 65. Inside the package were 492 Xanax pills totaling 144 grams, packaged into individual bags of 100 pills each. *Id.* at 76-81. Based upon Trooper Markley's experience, this weight of drugs was consistent with an intent to distribute the drugs rather than personal use. *Id.* at 81-83.

Back at the traffic stop, Trooper Markley showed the package to Epps, who denied any knowledge of it. *Id.* at 69. Epps did, however, identify one of the cell phones recovered from the SUV as his. *Id.* at 88. Police obtained a search warrant for computer analysis of the phone, which revealed seventy-eight "identifiers" connecting Epps with the phone and its retrieved data, including evidence of drug trafficking. *Id.* at 93-98. For example, a photograph taken a week before the traffic stop depicted a shipping package and a picture of pills resembling Xanax. *Id.* at 94-97. Other photographs

---

[2] Testing of Epps' blood revealed 7.4 ng/ml of Delta-9 Carboxy THC, which is a metabolite of marijuana. N.T., 12/12/2023, at 125-26.

depicted vacuum-sealed bags containing larger quantities of suspected Xanax and the driver's license of Epps' wife. *Id.* at 98. The recovered data included contacts saved with emojis depicting pills, as well as text message conversations with multiple people arranging sales of Xanax in large and small quantities, and references to packaging "big orders" of "white and yellow," obtaining "bars" (i.e., a large quantity of prescription pills) by mail, and placing "fake tags" on Epps' vehicle. *Id.* at 101-05, 108, 110-18.

Dauphin County Chief Detective Corey Dickerson testified as an expert in mid-level drug trafficking. *Id.* at 172-73. In his opinion, the number and price of the Xanax pills, the sum of cash, the text messages regarding the sale of "bars," and the circumstances of the traffic stop in a common drug trafficking corridor indicated that Epps possessed the drugs with intent to distribute instead of personal use. *Id.* at 176-78.

After hearing the above evidence and reviewing numerous exhibits, including dashcam footage from Trooper Markley's car, the jury convicted Epps of the above-referenced crimes. On December 4, 2023, the trial court sentenced Epps to serve consecutive sentences of one and one half to three years of incarceration for possession with intent to deliver and two to four years of incarceration for fleeing and eluding. The trial court also imposed a concurrent sentence of seventy-two hours to six months of incarceration for DUI. The trial court imposed no further penalty on the remaining convictions,

including the tampering with evidence conviction. Epps timely filed a notice of appeal. Epps and the trial court both complied with Pa.R.A.P. 1925.

Epps raises three issues on appeal:

1. Whether there was insufficient evidence to convict Epps of fleeing and eluding police officers when the evidence indicated Epps was significantly ahead of police when their sirens were engaged?

2. Whether there was insufficient evidence to convict Epps of tampering with evidence when Epps abandoned the evidence, and it was easily found by police?

3. Whether the trial court's sentence requires remand for the awarding of time credit?

Epps' Brief at 6.

## Sufficiency of the Evidence

We review Epps' two challenges to the sufficiency of the evidence pursuant to the following standard:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [factfinder].

*Commonwealth v. Scott*, 325 A.3d 844, 849 (Pa. Super. 2024) (citation omitted).

Fleeing or Eluding an Officer

Epps contends that the Commonwealth did not prove that his actions were willful. Epps' Brief at 15-18. Epps acknowledges that he was driving carelessly, but he contends the evidence insufficiently establishes that he did so in response to Trooper Markley's lights and siren or that he "was aware that [Trooper Markley's] actions were directed specifically at him." *Id.* at 16-17. Because of the distance between Epps' SUV and the police vehicle when Trooper Markley activated the lights and siren, Epps insists that whether he heard the siren or saw the lights is speculative. *Id.* at 17. In fact, Epps argues, once Trooper Markley's vehicle got closer to his SUV, he promptly pulled off the highway, exited the car, and complied with all demands. *Id.* Even tossing the brick of Xanax while speeding on the highway shows only that he was abandoning the drugs and "placing distance between himself and officers," not that he was fleeing due to an awareness that Trooper Markley was pursuing him or directing him to stop. *Id.* at 17-18.

A driver of a motor vehicle commits the offense of fleeing or eluding an officer if, "when given a visual and audible signal to bring the vehicle to a stop," the driver "willfully fails or refuses to bring his vehicle to a stop, or otherwise flees or attempts to elude a pursuing police officer." 75 Pa.C.S. §

3733(a); *see also Commonwealth v. Wise*, 171 A.3d 784, 789-90 (Pa. Super. 2017).

Upon review of the evidence in the light most favorable to the Commonwealth, we conclude that the evidence establishing Epps' manner of driving belies his claim that his actions were not willful. After Epps passed the police vehicle on the median and Trooper Markley pulled onto the highway to follow him, Epps accelerated "at such a high rate of speed that the SUV vehicle vanished from view momentarily." Trial Court Opinion, 4/19/2024, at 10. When Trooper Markley regained sight of the SUV, it was weaving in and out of lanes. N.T., 12/12/2023, at 49-50, 154. Once Trooper Markley sped after the SUV with his lights and siren activated, Epps continued to drive erratically by increasing his speed to upwards of 120 miles per hour, flying past a tractor-trailer by driving on the shoulder, and tossing the brick of Xanax out of the window before coming to a stop. *Id.* at 50-52, 136. Further, Trooper Mackey testified that it was common for a suspect during a police pursuit to discarding it along a bend in the road where the view of police is obscured and then surrendering, which is precisely what occurred here. *See* N.T., 12/12/2023, at 53.

Our law permits the jury to deduce reasonable inferences from the evidence. *Scott*, 325 A.3d at 849. Based upon these facts, it was reasonable for the jury to infer that Epps was aware of Trooper Markley's presence and that Trooper Markley was pursuing him and signaling for him to stop. Thus,

the Commonwealth sufficiently proved that Epps willfully fled from Trooper Markley, attempted to elude him as the officer pursued him, and refused to stop until he had discarded the brick of Xanax.

<u>Tampering with or Fabricating Physical Evidence</u>

The crime of tampering with evidence occurs when an individual, "believing that an official proceeding or investigation is pending or about to be instituted," alters, destroys, conceals, or removes "any record, document, or thing with intent to impair its verity or availability in such proceeding or investigation." 18 Pa.C.S. § 4910(1). Section 4910 "is derived from Section 241.7 of the Model Penal Code," and its purpose "is to specifically penalize prehearing or investigation fabrication or tampering as a broad application of 'obstructing justice.'" 18 Pa.C.S. § 4910, cmt. To establish this crime,

> the Commonwealth must prove three interrelated elements: (1) the defendant knew that an official proceeding or investigation was pending or about to be instituted; (2) the defendant altered, destroyed, concealed, or removed an item; and (3) the defendant did so with the intent to impair the verity or availability of the item to the proceeding or investigation.

***Commonwealth v. Yasipour***, 957 A.2d 734, 745 (Pa. Super. 2008).

Here, Epps does not dispute that he was aware that the officers were behind him, nor does he argue that the Commonwealth insufficiently proved that he believed that an investigation was underway based upon the high-speed police chase and sirens. ***See*** Epps' Brief at 19. Nevertheless, Epps argues that even if he maintained that belief, the Commonwealth did not prove as a matter of law that he altered, destroyed, concealed, or removed the brick

of Xanax—the actus reus—or that he intended to impair the verity or availability of the Xanax—the mens rea. ***Id.*** Epps insists that he simply abandoned evidence, which, pursuant to ***Commonwealth v. Delgado***, is insufficient to convict him under section 4910. Epps' Brief at 19-20. By tossing the drugs out of the car window, Epps contends he did not alter or destroy the drugs because they were recovered intact. ***Id.*** at 19. He did not conceal the drugs because he threw them in an open area alongside the road. ***Id.*** Although he removed the drugs from his vehicle, he emphasizes that he did not remove the drugs from the trooper's sight line. ***Id.*** As such, Epps asserts that he made the drugs "inconvenient to acquire" but that he did not intend to impair their verity or availability. ***Id.***

Without addressing ***Delgado***, the trial court opined that the jury could conclude that when Epps "became aware of police pursuit, he intended to remove them from his vehicle as soon as possible to conceal the drug package to impair its availability during the stop," thereby violating section 4910(1). Trial Court Opinion, 4/19/2024, at 11. The Commonwealth echoes this argument, but further insists that ***Delgado*** is inapplicable because Delgado did not attempt to conceal or destroy the drugs and merely abandoned them in full view of law enforcement. Commonwealth's Brief at 11. In contrast, the Commonwealth argues, Epps' act of throwing the drugs could have destroyed them, either from the impact of hitting the ground or by being run over by cars. ***Id.*** Further, the Commonwealth argues that Epps intended to conceal

the drugs with the hope that officers would not be able to find them or at least that they would not be available during the anticipated police stop. *Id.* at 11-12. The Commonwealth emphasizes that concealment of contraband may occur in the presence of officers. *Id.* at 11 (citing *Commonwealth v. Morales*, 669 A.2d 1003, 1006 (Pa. Super. 1996) (stating that it was "absurd to suggest … that [Morales] did not attempt to 'conceal'" a packet of drugs "simply because the act of concealment was done in the presence of the officers"; by swallowing the drugs, Morales intended to impair the officers' access to the packet)).

As *Delgado* is central to Epps' sufficiency challenge, we begin our analysis by examining that case. Upon receiving a pre-arranged signal from a confidential informant, state narcotics agents interrupted a controlled drug buy and approached Delgado. *Delgado*, 679 A.2d at 224. Delgado immediately fled on foot down an alley with the agents in pursuit. *Id.* An agent observed Delgado throw a plastic bag containing 17.1 grams of cocaine on top of a small outbuilding or garage and tackled him to the ground. *Id.* Delgado was convicted of possession of cocaine, possession of cocaine with intent to deliver, and tampering with or fabricating physical evidence. *Id.* Delgado challenged the sufficiency of the evidence to support his tampering with evidence conviction, arguing that throwing the cocaine did not constitute any of the enumerated acts in the statute. *Id.* The trial court found the

evidence to be sufficient, and on appeal this Court adopted the reasoning of the trial court. *Id.*

Our Supreme Court reversed, holding that the trial court and this Court erred as a matter of law by failing to "follow the plain meaning" of section 4910 because there was "nothing in the record to suggest that Delgado's conduct [came] within the realm" of any of the actions enumerated in the statute. *Id.* The Supreme Court noted that "when the words of a statute are clear and unambiguous, the letter of it must not be disregarded under the pretext of pursuing its spirit." *Id.* (quoting 1 Pa.C.S. § 1921(b)). Simply "discarding contraband in plain view of a pursuing officer" with the awareness that the officer was "right behind him," the Court reasoned, was insufficient "to demonstrate the intent necessary to maintain a conviction." *Id.* at 225. According to the Court, the "act of throwing the bag of cocaine while being chased by the police was nothing more than an abandonment of the evidence" and did not rise to the "level of conduct that constitutes the destruction or concealment of evidence as contemplated by the statute." *Id.* Further, because tampering with evidence was graded one degree higher than simple possession of cocaine, the Court opined that the General Assembly did not intend "the simple act of abandoning evidence in plain view of the police to constitute the commission of an additional crime of a greater degree." *Id.*

Upon review, we agree with Epps that pursuant to our Supreme Court's interpretation of section 4910(1) in ***Delgado***, the evidence is insufficient to

prove that he committed the crime of tampering with evidence. Our Supreme Court has decided that when a suspect is aware that a pursuing officer is behind him during a police chase and he tosses drugs away from himself in plain view of the officer, he is abandoning the drugs, not altering, destroying, concealing, or removing drugs with the intent to impair an investigation. **See Delgado**, 679 A.2d at 224-25; **see also Commonwealth v. Thomas**, No. 1651 MDA 2023, 2024 WL 4708023, at *7 (Pa. Super. Nov. 7, 2024) (non-precedential decision) (reversing a conviction under section 4910 because throwing marijuana out of a car window during a police chase "does not rise to the level of conduct that constitutes altering, destroying, concealing[,] or removing evidence," "fails to demonstrate the intent necessary" to sustain a conviction, and is "mere abandonment of the evidence" pursuant to **Delgado**).[3] This Court is bound to follow **Delgado** in the absence of a "legally relevant" factual distinction. **See N.W.M. through J.M. v. Langenbach**, 316 A.3d 7, 22 (Pa. 2024) (citation omitted). We do not find a legally relevant distinction between a suspect throwing contraband during a foot chase or during a car chase.[4] Although, generally speaking, an officer may be closer

_____

[3] **See** Pa.R.A.P. 126(b) (allowing nonprecedential decisions of this Court issued after May 1, 2019 to be cited for persuasive value).

[4] We note that in Epps' situation, unlike **Delgado**, the crime of possession with intent to deliver Xanax is graded more seriously than tampering with evidence. **Compare** 18 Pa.C.S. § 106(b)(5) and 35 P.S. § 780-113(a)(30), (f)(3) (classifying possession with intent to deliver a Schedule IV controlled
_(Footnote Continued Next Page)_

to a suspect during a foot chase than a car chase, the actus reus and mens rea of the suspect remains the same. By throwing the contraband, the suspect is divesting himself of physical possession of the contraband before the pursuing officer catches him. Because the suspect is aware of the pursuit, he knows that the officer may see him throw the contraband.

We are not persuaded by the Commonwealth's invocation of **Morales**, a decision of this Court issued shortly before the Supreme Court decided **Delgado**. In addition to this problematic timing, swallowing a packet of drugs in front of an officer is not akin to throwing packaged drugs away from oneself during a police chase. Unlike abandonment, which removes the contraband from the suspect completely while providing police immediate access to it, swallowing a drug packet doubles down on the suspect's power to control the contraband and his intent to exercise that control while impacting the integrity of the contraband and eliminating the officer's immediate ability to access the drugs.

---

substance as a third-degree felony subject to up to three years' imprisonment) **with** 18 Pa.C.S. §§ 106(b)(7), 4910(1) (classifying tampering with evidence as a misdemeanor of the second degree subject to up to two years' imprisonment). Without further guidance from our Supreme Court, we do not find this difference alters our duty to apply **Delgado**'s holding to this case.

Accordingly, based upon our Supreme Court's interpretation of section 4910(1) in **Delgado**,[5] we hold that the Commonwealth failed to introduce evidence sufficient to prove that Epps committed the crime of tampering with evidence.

## Time Credit

In his final issue, Epps argues that his sentence is illegal because it fails to credit him for time that he spent in custody on these charges prior to trial. Epps' Brief at 20-22. He contends that he was denied bail upon his arrest on April 17, 2021, and that he was held until bail was set on May 27, 2021. **Id.** at 22. Epps acknowledges that he did not raise this issue before the trial court but maintains that this issue challenges the legality of his sentence and thus cannot be waived. **Id.** at 21-22.

Section 9760 provides that the trial court must credit the defendant for "all time spent in custody as a result of the criminal charge for which a prison

---

[5] We observe that, other than establishing the suspect's awareness of the pursuing officer during a police chase, **Delgado** does not provide guidance on how to discern abandonment from alteration, destruction, concealment, and removal of evidence with the intent to impair an official investigation. The **Delgado** Court's reasoning is rather opaque as to whether it found the actus reus or mens rea to be lacking or both. Instead, the **Delgado** Court closely hewed its analysis to the facts in the case without explicitly engaging in a statutory construction analysis. It is possible for the statutory language of section 4910 to be susceptible of more than one reasonable interpretation. Whether it would change the disposition of Epps' sufficiency challenge, however, is beyond the scope of this decision because we are bound by the holding of **Delgado**.

sentence is imposed or as a result of the conduct on which such a charge is based," including "credit for time spent in custody prior to trial." 42 Pa.C.S. § 9760(1). A claim asserting the trial court imposed a sentence without awarding time credit in accordance with section 9760 implicates the legality of sentence, which we review de novo. ***Commonwealth v. Gibbs***, 181 A.3d 1165, 1166 (Pa. Super. 2018).

Ordinarily, to preserve an issue for appellate review, an appellant must first raise the issue before the trial court. Pa.R.A.P. 302(a). An exception to issue preservation exists, however, if the claim challenges the legality of the sentence imposed. ***See Commonwealth v. Armolt***, 294 A.3d 364, 376 (Pa. 2023) ("An appellate court may address, and even raise sua sponte, challenges to the legality of an appellant's sentence even if the issue was not preserved in the trial court.").

The Commonwealth concedes that Epps should have been credited with time served between April 17, 2021, and May 27, 2021. Commonwealth's Brief at 12. Our review of the certified record confirms that the trial court neglected to award credit for this time served. Accordingly, Epps' sentence is illegal and must be corrected. ***See Commonwealth v. Dixon***, 161 A.3d 949, 951 (Pa. Super. 2017). We therefore vacate Epps' judgment of sentence and remand to the trial court to ensure that Epps receives credit in accordance with section 9760(1).

## **Conclusion**

Because the Commonwealth introduced evidence sufficient to prove that Epps fled or eluded an officer but failed to introduce sufficient evidence to prove that Epps tampered with evidence, we affirm in part and reverse in part. Furthermore, because the trial court neglected to impose credit for time served in accordance with 42 Pa.C.S. § 9760(1), we vacate Epps' judgment of sentence.

Judgment of sentence affirmed in part and reversed in part. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/24/2025